ORION FLIGHT SERVICES, INC.,
Plaintiff-Respondent-Petitioner,

v.

BASLER FLIGHT SERVICE, a division of
Basler Turbo Conversions, LLC,
Defendant-Appellant.

Supreme Court

*No. 2003AP1731. Oral argument October 12, 2005.
—Decided May 19, 2006.*

2006 WI 51

(Also reported in 714 N.W.2d 130.)

424

For the plaintiff-respondent-petitioner there were briefs by *Russell A. Klingaman, Jeffrey D. Patza* and *Hinshaw & Culbertson LLP,* Milwaukee, and oral argument by *Russell A. Klingaman.*

For the defendant-appellant there was a brief by *Laura A. Brenner, Joseph W. Voiland* and *Reinhart Boerner Van Deuren s.c.,* Milwaukee, and oral argument by *Laura A. Brenner.*

An amicus curiae brief was filed by *Colleen D. Ball* and *Appellate Counsel SC,* Wauwatosa, on behalf of Midwest Airlines and Wisconsin Aviation Trades Association, Inc.

¶ 1. LOUIS B. BUTLER, JR., J. Orion Flight Services, Inc. ("Orion") seeks review of a published

decision by the court of appeals[1] reversing the circuit court's preliminary injunction requiring that Basler Flight Service, a division of Basler Turbo Conversions, LLC ("Basler"), set the price of its aviation fuel pursuant to the minimum markup provisions for motor vehicle fuel under the Wisconsin Unfair Sales Act.[2]

¶ 2. At issue in this case is whether aviation fuel constitutes "motor vehicle fuel" under the Wisconsin Unfair Sales Act, subjecting aviation fuel to the Act's minimum markup provisions for motor vehicle fuel.[3]

¶ 3. Upon review, we conclude that "motor vehicle fuel" does not include aviation fuel, that the minimum markup provisions in Chapter 100 of the Wisconsin Statutes do not apply to aviation fuel, and that Orion cannot rely on Wis. Stat. § 100.30 for a private cause of action against Basler. We also conclude that the Wisconsin Administrative Code § ATCP 105.001(4) (Sept., 1990) does not incorporate aviation fuel in its definition

---

[1] *Orion Flight Servs., Inc. v. Basler Flight Serv.,* 2004 WI App 222, 277 Wis. 2d 819, 692 N.W.2d 804.

[2] Wis. Stat. § 100.30 (2003–04). All references to the Wisconsin Statutes hereinafter are to the 2003–04 version unless otherwise noted.

The Wisconsin Unfair Sales Act prohibits Wisconsin merchants from selling products below cost. The Act also establishes a particular pricing scheme for "motor vehicle fuel" by defining "cost" for the sale of "motor vehicle fuel" to include a markup, ranging from 3 percent to 9.18 percent. § 100.30(2)(am)1m.c. This minimum legal selling price is referred to as a "minimum markup." *See infra* n.18–21 and accompanying text.

[3] It is not disputed that even if motor vehicle fuel does not encompass aviation fuel within the context of the Unfair Sales Act, aviation fuel cannot be sold below cost since no vendor can sell any merchandise of any type below cost. Wis. Stat. § 100.30(3). *See also* § 100.30(2)(am)2. and (c)2.

427

of "motor vehicle fuel," and is thus consistent with the statute. We therefore affirm the court of appeals' decision reversing the circuit court's preliminary injunction.

I

¶ 4. The relevant facts are undisputed. In 1957, Winnebago County and Basler entered into an agreement for Basler to sell aviation fuel at the Wittman Regional Airport ("Wittman") in Oshkosh, Wisconsin. Basler is a Fixed Based Operation ("FBO"), which is a vendor of services at an airport or airfield. Basler sells "Jet A fuel" and "100 LL aviation fuel" at Wittman through a self-service pump for use by airplane owners, as well as through the use of a fleet of trucks that deliver the fuel to aircrafts. Basler continues to operate under this agreement.

¶ 5. From 1957 to 2002, Basler had been the sole provider of aviation fuel for Wittman, and the only FBO under an agreement with Winnebago County. However, on May 29, 2002, Winnebago County entered into an agreement with Orion to sell aviation fuel at Wittman. Orion, like Basler, sells Jet A fuel and 100 LL aviation fuel. Unlike Basler, Orion only delivers the fuel to aircrafts and does not operate self-service pumps.

¶ 6. In 2002 and early 2003, the parties engaged in a "price war" where the price of aviation fuel at Wittman dropped from $2.59 to a low of $1.599 per gallon.[4] In November 2002, Orion filed a complaint

---

[4] When Orion began operating at Wittman on August 21, 2002, its initial price per gallon on truck-delivered aviation fuel was $2.54. At that time, Basler's truck-delivered aviation fuel price was $2.59 per gallon. In early September 2002, Orion dropped its truck-delivered aviation fuel to $1.99 per gallon, and

with the Wisconsin Department of Agriculture, Trade and Consumer Protection ("DATCP"). Orion alleged that when Basler set its price of fuel at $1.599 per gallon, Basler set its fuel price below cost, in violation of the Unfair Sales Act, Wis. Stat. § 100.30(3).[5] DATCP began an investigation into Basler's fuel prices.[6]

¶ 7. On March 19, 2003, before DATCP completed its investigation, Orion filed a suit in Winnebago County alleging that Basler sold motor vehicle fuel

Basler subsequently reduced its price to $1.89 per gallon. Orion then dropped its price to $1.69 per gallon. On September 28, 2002, Basler set its price at $1.599 per gallon. Basler raised its prices in early January 2003 to $1.65 per gallon, on January 8 to $1.80 per gallon, and again on February 20 to $1.99 per gallon.

[5] The section reads in full:

Any sale of any item of merchandise either by a retailer, wholesaler, wholesaler of motor vehicle fuel or refiner, at less than cost as defined in this section with the intent or effect of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor, impairs and prevents fair competition, injures public welfare and is unfair competition and contrary to public policy and the policy of this section. Such sales are prohibited. Evidence of any sale of any item of merchandise by any retailer, wholesaler, wholesaler of motor vehicle fuel or refiner at less than cost as defined in this section shall be prima facie evidence of intent or effect to induce the purchase of other merchandise, or to unfairly divert trade from a competitor, or to otherwise injure a competitor.

Wis. Stat. § 100.30(3).

[6] The Wisconsin Department of Agriculture, Trade and Consumer Protection ("DATCP") has the statutory authority to "commence an action on behalf of the state to recover a forfeiture," Wis. Stat. § 100.30(4), or "issue a special order as provided in s. 93.18 against a retailer, wholesaler, wholesaler of motor vehicle fuel or refiner requiring the person to cease and desist from violating this section in the sale of cigarettes or other tobacco products, fermented malt beverages, intoxicating liquor or wine or motor vehicle fuel," § 100.30(5)(a).

below the statutory minimum required for motor vehicle fuel, in violation of the Unfair Sales Act, and seeking injunctive relief.

¶ 8. Two days after Orion filed this suit, Basler received a warning letter from DATCP. DATCP concluded that Basler's "cost" of the 100 LL aviation fuel was $1.78, and therefore Basler violated Wis. Stat. § 100.30 when it sold its 100 LL aviation fuel at prices below $1.78.[7] In the warning letter, DATCP further concluded that the minimum markup requirement under the Unfair Sales Act for sales of "motor vehicle fuel" did not include aviation fuel.

> [W]e have explored the issue of whether or not 100 LL aviation fuel should be treated as "motor vehicle fuel" under the Unfair Sales Act . . . . We have concluded that 100 LL aviation fuel is not "motor vehicle fuel" as the term is used in the statute. We base this conclusion on the common sense fact that airplanes are generally not considered "motor vehicles" under various transportation statutes and codes. Furthermore, it seems illogical that the term "motor vehicle fuel" as it is used in the statute was intended to be used outside of the contents of sales of fuel intended for highway use through the well established industry of retail gas stations and convenience stores.[8]

¶ 9. Although DATCP concluded that aviation fuel was not "motor vehicle fuel," it also warned Basler that "any person who is injured as a result of a competitor selling *motor vehicle fuel* below cost may sue for

---

[7] Rod McNeil, Section 100.30, Wisconsin Statutes, The Unfair Sales Act *Warning Letter* Complaint number 4139, DATCP, March 21, 2003 (noting that because Basler's "cost" was $1.78 per gallon, Basler "was no longer in violation of the Unfair Sales Act" when it "raised its price to $1.80 on January 8, 2003").

[8] *Id.*

$2,000 per day or treble actual damages, whichever is greater, plus reasonable accounting and attorney fees."[9] In addition, later that same day, DATCP followed up with a second letter to Basler, stating that

> [S]ome additional information has come to our attention regarding the question of whether aviation fuel is covered under the Unfair Sales Act as "motor vehicle fuel." Based on this new development, we have decided that we need to do additional research on this question before we issue a final interpretation on this issue. Specifically, in the first paragraph on page 2 of the warning letter, we state an opinion that 100 LL aviation fuel is not "motor vehicle fuel" under the Unfair Sales Act. *That paragraph and the opinion it expresses is hereby retracted.* However, the remainder of the warning letter still stands.[10]

¶ 10. This second letter explicitly retracts "the opinion that 100 LL aviation fuel is not 'motor vehicle

---

[9] *Id.* (emphasis added). The authority for private action is rooted in the Wisconsin Unfair Sales Act, but only applies to motor vehicle fuel. The statute reads:

> Any person who is injured or threatened with injury as a result of a sale or purchase of *motor vehicle fuel* in violation of sub. (3) may bring an action against the person who violated sub. (3) for temporary or permanent injunctive relief or an action against the person for 3 times the amount of any monetary loss sustained or an amount equal to $2,000, whichever is greater, multiplied by each day of continued violation, together with costs, including accounting fees and reasonable attorney fees, notwithstanding s. 814.04(1). An action under this subsection may not be brought after 180 days after the date of a violation of sub. (3).

Wis. Stat. § 100.30(5m) (emphasis added).

[10] Rod McNeil, Retraction in part of warning letter issued March 21, 2003, in File Number 4139, DATCP, March 21, 2003 (emphasis in original). The court of appeals noted that this retraction was in response to communications between DATCP and Orion's attorney.

fuel.' " However, DATCP failed to retract its conclusion that the cost for Basler's 100 LL aviation fuel was $1.78. The analysis used to reach the $1.78 figure did not include a minimum markup calculation.[11] *See* Wis. Stat. § 100.30(2)(am)1m.a. to e. Moreover, the record contains no final interpretation of "motor vehicle fuel," and no final order from DATCP.

¶ 11. On March 19, 2003, the Winnebago County Circuit Court issued an ex parte temporary restraining order, ordering Basler to, among other things, "immediately refrain from selling any motor vehicle fuel below the minimum prices established by Wis. Stat. § 100.30, the Unfair Sales Act."[12]

¶ 12. On May 2, 2003, the Honorable Thomas J. Gritton granted Orion's preliminary injunction request, finding that:

> The definition is clear to me and under the circumstances as we have them here the fuel that is being used is being placed into what I would consider to be under that definition a motor vehicle for purposes of the Unfair Sales Act.

¶ 13. The circuit court ordered Basler to "immediately refrain from selling 100 LL fuel 'below cost' as defined in Wis. Stat. § 100.30(2)(am)1m.c."[13] The cir-

---

[11] McNeil, DATCP Warning Letter, March 21, 2003.

[12] The March 19, 2003 Temporary Restraining Order also ordered Basler to produce "any and all written documentation concerning its purchase and sale of motor vehicle fuel from September 1, 2002 to the present."

[13] The statute states:

In the case of the retail sale of motor vehicle fuel by a person other than a refiner or a wholesaler of motor vehicle fuel at a retail station, the invoice cost of the motor vehicle fuel to the retailer within 10 days prior to the date of sale, or the replacement cost of

cuit court based its decision on the definition of motor vehicle fuel in Wis. Admin. Code § ATCP 105.001(4).[14] The court reasoned that the definition of motor vehicle is unambiguous in the code, and under the circumstances of the facts of this case, the fuel sold by Basler and Orion constitutes "motor vehicle fuel" for purposes of the Unfair Sales Act.

¶ 14. Basler filed an interlocutory appeal. The court of appeals granted leave to appeal and reversed. The court of appeals concluded that including aviation fuel in the definition of "motor vehicle fuel" strayed too far from the legislature's intent.[15] The court of appeals also concluded that because the Unfair Sales Act excludes aviation fuel from the definition of "motor vehicle fuel," "the DATCP's definition may extend no further."[16]

---

the motor vehicle fuel, whichever is lower, less all trade discounts except customary discounts for cash, plus any excise, sales or use taxes imposed on the motor vehicle fuel or on its sale and any cost incurred for transportation and any other charges not otherwise included in the invoice cost or the replacement cost of the motor vehicle fuel, plus a markup of 6% of that amount to cover a proportionate part of the cost of doing business; or the average posted terminal price at the terminal located closest to the retailer plus a markup of 9.18% of the average posted terminal price to cover a proportionate part of the cost of doing business; whichever is greater.

Wis. Stat. § 100.30(2)(am)1m.c.

[14] The Administrative Code reads:

"Motor vehicle fuel" means any liquid prepared, advertised or sold for use as or commonly and commercially used as a fuel in internal combustion engines.

Wis. Admin. Code § ATCP 105.001(4).

[15] *Orion,* 277 Wis. 2d 819, ¶ 24.

[16] *Id.,* ¶ 27.

¶ 15. Orion asks this court to reverse the court of appeals and find that "motor vehicle fuel" includes aviation fuel for purposes of the Unfair Sales Act. Orion contends that the court of appeals unnecessarily limited the definition of "motor vehicle fuel." In contrast, Basler asks this court to affirm the court of appeals, asserting that the language of the statute, along with its context, structure, and its relationship with other statutes, indicate that aviation fuel is not "motor vehicle fuel" within the meaning of the Unfair Sales Act.

II

¶ 16. This case presents a question of statutory interpretation, which we review de novo. *State v. Reed,* 2005 WI 53, ¶ 13, 280 Wis. 2d 68, 695 N.W.2d 315. The purpose of statutory interpretation is to determine what a statute means in order to give the statute its full, proper, and intended effect. *Id.* "We begin with the statute's language because we assume that the legislature's intent is expressed in the words it used." *Id.* Generally, language is given its common, ordinary, and accepted meaning. *Kalal v. Dane County Cir. Ct.,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. In addition, statutory language is interpreted in the context in which it is used, in relation to the language of surrounding or closely-related statutes, and interpreted to avoid absurd or unreasonable results. *Id.,* ¶ 46.

¶ 17. "If the meaning is plain, we ordinarily stop the inquiry." *Reed,* 280 Wis. 2d 68, ¶ 13. However, if a statute is ambiguous, we examine extrinsic sources, such as legislative history, to ascertain the legislative intent. *Kalal,* 271 Wis. 2d 633, ¶ 48. A statute is ambiguous if "[t]he statute's ability to support two

reasonable constructions creates an ambiguity which cannot be resolved through the language of the statute itself. [A] statutory provision is ambiguous if reasonable minds could differ as to its meaning." *UFE Inc. v. LIRC,* 201 Wis. 2d 274, 283, 548 N.W.2d 57 (1996) (quotation omitted).

■

¶ 18. This case also requires this court to examine the meaning of an administrative code provision. The interpretation of an administrative code provision is "a question of law subject to independent appellate review." *State ex rel. Griffin v. Smith,* 2004 WI 36, ¶ 18, 270 Wis. 2d 235, 677 N.W.2d 259. Interpretations of code provisions, and the determination as to whether the provision in question is consistent with the applicable statute, are subject to principles of statutory construction.[17] *Basinas v. State,* 104 Wis. 2d 539, 546, 312 N.W.2d 483 (1981); *Griffin,* 270 Wis. 2d 235, ¶ 19; *State v. Busch,* 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998). If a rule is ambiguous, we may resort to extrinsic aids to determine agency intent. *State ex rel. Staples v. Young,* 142 Wis. 2d 348, 354, 418 N.W.2d 333 (Ct. App. 1987). In resolving the ambiguity, this court gives deference to an agency's settled "interpretation and application of its own administrative regulations unless the interpretation is inconsistent with the language of the regulation or is clearly erroneous." *Bergmann v. McCaughtry,* 211 Wis. 2d 1, 7, 564 N.W.2d 712 (citations omitted).

---

[17] *See* Wis. Stat. § 227.27(1), which states:

In construing rules, ss. 990.001, 990.01, 990.03(1), (2) and (4), 990.04 and 990.06 apply in the same manner in which they apply to statutes, except that ss. 990.001 and 990.01 do not apply if the construction would produce a result that is inconsistent with the manifest intent of the agency.

## III

¶ 19. We begin our analysis of whether the Unfair Sales Act applies to aviation fuel with an examination of the statute.

¶ 20. The Unfair Sales Act establishes a statutory scheme for regulating vendor pricing in Wisconsin. Although the Unfair Sales Act prohibits all vendors from selling merchandise below cost,[18] the Act establishes a particular pricing scheme for "motor vehicle fuel" by defining "cost" for the sale of "motor vehicle fuel" to include a markup, ranging from 3 percent to 9.18 percent.[19] This minimum legal selling price is referred to as a "minimum markup." The statute also contains markup provisions for computing costs for "cigarettes or other tobacco products, fermented malt beverages or intoxicating liquor or wine."[20] No other merchandise is currently subject to a minimum markup.[21]

¶ 21. Under the Unfair Sales Act:

> Any sale of any item of merchandise either by a retailer, wholesaler, wholesaler of motor vehicle fuel or refiner, at less than cost as defined in this section with the intent or effect of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor, impairs and prevents fair competition, injures public welfare and is unfair competition and

---

[18] Wis. Stat. § 100.30(3).

[19] The percent markup depends upon whether the vendor is a refiner, a wholesaler, or a person other than a refiner or wholesaler, whether the vendor sells at a retail station or at a place other than a retail station, and whether the sale is a retail sale or wholesale sale. Wis. Stat. § 100.30(2)(am)1m.a. to e.

[20] Wis. Stat. § 100.30(2)(am)1.

[21] *See* Wis. Stat. § 100.30(2)(am)2. and (c)2.

contrary to public policy and the policy of this section. Such sales are prohibited. Evidence of any sale of any item of merchandise by any retailer, wholesaler, wholesaler of motor vehicle fuel or refiner at less than cost as defined in this section shall be prima facie evidence of intent or effect to induce the purchase of other merchandise, or to unfairly divert trade from a competitor, or to otherwise injure a competitor.[22]

¶ 22. The statute also establishes a private right of action for merchants who sell motor vehicle fuel below cost, as defined in subsection (3). Wis. Stat. § 100.30(5m). Under this subsection, "Any person who is injured or threatened with injury as a result of a sale or purchase of motor vehicle fuel" is authorized to bring an action against the merchant who violated this statute for "temporary or permanent injunctive relief" or for treble damages or $2,000 for each day the violation continues, whichever is greater. *Id.*[23]

¶ 23. The question before this court is whether the legislature intended aviation fuel to constitute "motor vehicle fuel" under the Unfair Sales Act.

A

¶ 24. The Unfair Sales Act does not define "motor vehicle fuel." When a statute does not define an essential term, we examine the ordinary meaning of that term. *State v. Martin,* 162 Wis. 2d 883, 904, 470 N.W.2d 900 (1991). *See also Bruno v. Milwaukee County,* 2003 WI 28, ¶ 8, 260 Wis. 2d 633, 660 N.W.2d 656 (citing

---

[22] Wis. Stat. § 100.30(3).

[23] The statute explicitly establishes a private right of action only for motor vehicle fuel, Wis. Stat. § 100.30(5m), and tobacco products, § 100.30(5r).

*Weber v. Town of Saukville,* 209 Wis. 2d 214, 224, 562 N.W.2d 412 (1997)). We normally turn to a "recognized dictionary to determine the common and ordinary meaning of the word." *Mared Industries, Inc. v. Mansfield,* 2005 WI 5, ¶ 32, 277 Wis. 2d 350, 690 N.W.2d 835 (quoting *State v. Polashek,* 2002 WI 74, ¶ 19, 253 Wis. 2d 527, 646 N.W.2d 330)).

¶ 25. Orion asserts that the meaning of "motor vehicle fuel" clearly and unambiguously includes aviation fuel, and therefore the court need not examine any extrinsic materials to discern the legislature's intent. Orion contends that dictionary definitions of the words "motor," "vehicle," and "fuel," when considered together, compel the conclusion that the term "motor vehicle fuel" means a combustible matter used to run a comparatively small and powerful engine, such as an internal combustion engine, in any means of conveyance, which would include an aircraft. Basler counters that a phrase must be understood according to its common usage and cannot be parsed into its least common denominators and recast into something new. Basler implies that Orion's method produces absurd results, suggesting that, under Orion's approach, a "hot dog" would be defined as a domesticated, carnivorous animal that radiates heat. Basler offers its own definition, contending that the plain meaning of "motor vehicle" commonly refers to fuel used by cars, trucks, and similar earth-bound vehicles.

¶ 26. We find no dictionary definition for the phrase "motor vehicle *fuel.*" The dictionary defines "motor vehicle" as "[a] self-propelled wheeled conveyance, such as a car or truck, that does not run on rails." *American Heritage Dictionary of English Language,* 1179 (3d ed. 1992). In addition, though we find no definition of "aviation fuel," the dictionary defines "air-

438

plane" as "various winged vehicles capable of flight, generally heavier than air and driven by jet engines or propellers." *Id.* at 39. Neither of these definitions, nor the definitions proffered by the parties, clarify whether *motor vehicle fuel* includes aviation fuel. We therefore consider other intrinsic sources, such as the statement of purpose and the context in which statutory language is used. *Kalal,* 271 Wis. 2d 633, ¶ 49. We begin by examining the legislature's statement of legislative intent.

## B

¶ 27. The Wisconsin Legislature included a statement of policy when it passed the Unfair Sales Act. The policy states:

> The practice of selling certain items of merchandise below cost in order to attract patronage is generally a form of deceptive advertising and an unfair method of competition in commerce. Such practice causes commercial dislocations, misleads the consumer, works back against the farmer, directly burdens and obstructs commerce, and diverts business from dealers who maintain a fair price policy. Bankruptcies among merchants who fail because of the competition of those who use such methods result in unemployment, disruption of leases, and nonpayment of taxes and loans, and contribute to an inevitable train of undesirable consequences, including economic depression.

Wis. Stat. § 100.30(1).[24]

¶ 28. Under this express statement of intent, the policy of Wis. Stat. § 100.30 is to protect Wisconsin consumers and merchants against unfair competition

---

[24] This statement of legislative intent was included in the original version of this law in 1939. *See* ch. 56, Laws of 1939.

in commerce. The statute seeks to achieve this policy by prohibiting the sale of merchandise *below cost.*[25] This court has previously recognized that the legislative intent behind other state statutes similar to the Unfair Sales Act is to address an "economic evil"[26] and "promote[] the general welfare" by fostering free, open, and fair competition.[27]

¶ 29. In concluding that "motor vehicle fuel" does not include aviation fuel for purposes of the Unfair Sales Act, the court of appeals relied heavily on its determination that "the legislature intended the Unfair Sales Act to prevent large vendors from driving *small* competitors out of business . . ." and that common sense would clearly reveal that the aviation fuel market is outside the scope "of the 'mom and pop' businesses the legislature intended to protect." *Orion,* 277 Wis. 2d 819, ¶¶ 22–23 (citation omitted).

¶ 30. Orion contends that the court of appeals improperly concluded that the legislative intent behind the Unfair Sales Act did not include FBOs because they are not "mom and pop" businesses. Basler's pricing scheme, Orion asserts, is exactly the type of unfair competition the legislature intended to ban through the Unfair Sales Act in an attempt to protect consumers and businesses. Orion asks this court to conclude that the Unfair Sales Act applies to more than "mom and pop" convenience stores.

¶ 31. Upon review we find nothing in the stated purpose of legislative intent that limits the Unfair Sales

---

[25] Wis. Stat. § 100.30(3).

[26] *State v. Ross,* 259 Wis. 379, 384, 48 N.W.2d 460 (1951).

[27] *State v. Eau Claire Oil Co.,* 35 Wis. 2d 724, 733, 151 N.W.2d 634 (1967).

Act to "mom and pop" establishments. The purpose of the Act is to protect consumers against unfair pricing. To that effect, it is not disputed that Basler is prohibited under the Act from selling its fuel below cost. But that is not the question before this court. We must determine whether the cost of aviation fuel is to be calculated as "motor vehicle fuel" and therefore subject to the minimum markup, or whether the cost of aviation fuel is to be calculated like all other merchandise. There is nothing in the stated purpose, or in the public policy recognized by this court in other cases, that suggests whether selling aviation fuel with or without the minimum markup would constitute a greater economic evil, foster unfair competition, or harm Wisconsin consumers.

## C

¶ 32. Because we interpret statutory language "in relation to the language of surrounding or closely-related statutes . . . to avoid absurd or unreasonable results," *Kalal,* 271 Wis. 2d 633, ¶ 46, our plain meaning analysis of the Unfair Sales Act also focuses on related statutes.

¶ 33. Orion contends that the circuit court properly determined that Chapter 78 and Wis. Stat. § 100.30 are not "related" because they concern different areas of law; Chapter 78 is a taxation statute, whereas Chapter 100 addresses trade and marketing. Therefore, according to Orion, the definition of "motor vehicle fuel" in Chapter 78 is inapplicable to § 100.30.

¶ 34. In contrast, Basler urges this court to conclude that the Unfair Sales Act must be read together with Chapter 78, which defines and distinguishes "motor vehicle fuel" and "aviation fuel," because the statutes relate to the same subject matter: Chapter 78 establishes the state excise taxes that a fuel seller

441

must use to determine its minimum sale price for motor vehicles under the Unfair Sales Act. According to Basler, interpreting the term "motor vehicle fuel" in Wis. Stat. § 100.30 to include aviation fuel would result in an absurd contradiction: the same aviation fuel would be subject to "aviation fuel" calculations under one statute (Chapter 78), but subject to "motor vehicle fuel" calculations under a related statute (Chapter 100). This would create a conflict and an absurd relationship between the Unfair Sales Act and Chapter 78.

¶ 35. We find Basler's argument persuasive. Chapters 78 and 100 relate to the same subject matter. This court should therefore attempt to harmonize the two chapters, if possible, to avoid absurd results. *State v. Wachsmuth,* 73 Wis. 2d 318, 326–30, 243 N.W.2d 410 (1976) (concluding that when two statutes are *"in pari materia,* the court must harmonize them if possible").

¶ 36. Chapter 78 distinguishes between motor vehicle fuel and general aviation fuel. Under Wis. Stat. § 78.005(13), " 'Motor vehicle fuel' means gasoline or diesel fuel." Motor vehicle is defined as a conveyance that is "self-propelled by an internal combustion engine or motor and licensed for highway use." Wis. Stat. § 78.005(12).

¶ 37. In contrast, aviation fuel is defined separately from "motor vehicle fuel." Under Chapter 78:

"General aviation fuel" means products placed in the fuel supply tank of aircraft, *commonly or commercially known as aviation gasoline and jet turbine fuel* and other combustible gases and liquids suitable for the generation of power for propulsion of aircraft.[28]

[28] Wis. Stat. § 78.55(3) (emphasis added).

¶ 38. It is clear from the Chapter 78 definitions that with respect to Chapter 78, the legislature has defined "motor vehicle fuel" as gasoline or diesel fuel used in vehicles capable of being driven on a highway, while general aviation fuel is defined as that which is specifically designed for aircraft. The legislature approached these fuels differently for purposes of Chapter 78.

¶ 39. In addition to Chapter 78, Orion also asserts that the court of appeals improperly relied on the definition of the term "motor vehicle" in Wis. Stat. § 340. Although other sections of Chapter 100 cross-reference Chapter 340, the Unfair Sales Act does not. Basler counters that although the term "motor vehicle" is not defined in Wis. Stat. § 100.30, numerous sections of Chapter 100 reference the definition of vehicle in chapter 340, which, like Chapter 78, limits the definition to highway use.

¶ 40. Upon review, we find five subsections of Chapter 100 that currently cross-reference the term "motor vehicle" as defined in Wis. Stat. § 340.01(35).[29] Chapter 340 refers to vehicles that are used on land and does not include airplanes.[30]

---

[29] Wis. Stat. §§ 100.205(1)(c) (" 'Rustproofing' means the application of materials and processes intended or represented to prevent or control rusting or corrosion of a motor vehicle as defined in s. 340.01(35)"); 100.21(1)(d) (addressing the substantiation of energy savings or safety claims, " 'Motor vehicle' has the meaning provided under s. 340.01(35)"); 100.42(1)(h) (addressing product safety, " 'Motor vehicle' has the meaning given under s. 340.01(35)"); 100.45(1)(c) (addressing mobile air conditioners, " 'Motor vehicle' has the meaning given in s. 340.01 (35)"); and 100.51(5)(1) (addressing motor fuel dealerships, " 'Motor vehicle' has the meaning given in s. 340.01 (35)").

[30] The statutes read:

¶ 41. Examining Wis. Stat. § 100.30 in the context of Chapter 78, as well as in the context of the cross-references between Chapter 100 and § 340.01(35), we determine that when the legislature has defined "motor vehicle" or "vehicle," it has continuously referenced conveyances that operate on land and has not included aircraft.

¶ 42. However, these statutory definitions of "motor vehicle," "motor vehicle fuel" and "general aviation fuel" are not cross-referenced in Wis. Stat. § 100.30. When a statute with respect to one subject contains a given provision, "the omission of such provision from a similar statute concerning a related subject is significant in showing that a different intention existed." *Kimberly-Clark Corp. v. Pub. Serv. Comm'n of Wisconsin*, 110 Wis. 2d 455, 463, 329 N.W.2d 143 (1983) (quoting *State v. Welkos*, 14 Wis. 2d 186, 192, 109 N.W.2d 889 (1961)).[31]

---

"Motor vehicle" means a vehicle, including a combination of 2 or more vehicles or an articulated vehicle, which is selfpropelled, except a vehicle operated exclusively on a rail. "Motor vehicle" includes, without limitation, a commercial motor vehicle or a vehicle which is propelled by electric power obtained from overhead trolley wires but not operated on rails. A snowmobile and an allterrain vehicle shall only be considered motor vehicles for purposes made specifically applicable by statute.

Wis. Stat. § 340.01(35) (emphasis added). "Vehicle" is further defined:

"Vehicle" means every device in, upon, or by which any person or property is or may be transported or drawn *upon a highway*, except railroad trains. A snowmobile or electric personal assistive mobility device shall not be considered a vehicle except for purposes made specifically applicable by statute.

Wis. Stat. § 340.01(74) (emphasis added).

[31] In *State v. Welkos*, 14 Wis. 2d 186, 192, 109 N.W.2d 889 (1961), this court reasoned that because the legislature had

¶ 43. We cannot ignore the legislature's consistent definitions of "motor vehicle" and "motor vehicle fuel" throughout the Wisconsin Statutes, nor can we ignore the fact that Wis. Stat. § 100.30 does not explicitly cross-reference any of these statutory definitions of "motor vehicle" or "motor vehicle fuel." We therefore conclude that the language of the surrounding and closely-related statutes fails to clarify the meaning of "motor vehicle fuel" in § 100.30 as to whether it includes "aviation fuel."

## D

¶ 44. Orion asserts that the plain language of this statutory definition of "motor vehicle fuel" includes gasoline used to power numerous types of motor vehicles, including aircraft, boats, farm equipment, construction machinery, motorcycles, and snowmobiles. In contrast, Basler contends that "motor vehicle fuel" refers to the fuel used by cars, trucks, and similarly earthbound vehicles, and therefore the statutory language clearly does not include aviation fuel.

¶ 45. Simply because parties disagree on the "plain" interpretation of a statute does not make the statute ambiguous. *Preston v. Meriter Hosp., Inc.,* 2005 WI 122, ¶ 20, 284 Wis. 2d 264, 700 N.W.2d 158. However, we agree with the court of appeals and find that "neither party advances a definition wildly at odds with common sense." *Orion,* 277 Wis. 2d 819, ¶ 21. In addition, neither party advances a definition at odds with the plain meaning of the statute. The use of the

amended one statute but did not make a like change to a similar statute, the omission of that new provision from the similar statute demonstrated a different intent.

term "motor vehicle fuel" in Wis. Stat. § 100.30, therefore, supports two reasonable constructions that cannot be resolved through the language itself. *See UFE,* 201 Wis. 2d at 283. We conclude that the statute is ambiguous because it is open to more than one reasonable interpretation. We therefore turn to extrinsic sources to determine the legislative intent.

## IV

¶ 46. Because we find the Unfair Sales Act ambiguous, we review the relevant administrative code provision, DATCP's interpretations of the statute and code, and the legislative history of the statute. *See Kalal,* 271 Wis. 2d 633, ¶¶ 48, 50; *UFE,* 201 Wis. 2d at 282–83.

## A

¶ 47. We begin with an examination of the administrative code provision that defines "motor vehicle fuel" for purposes of the Unfair Sales Act. The Wisconsin Statutes authorize the legislature to delegate the authority to administrative agencies to make rules necessary to effectuate a statute. Wis. Stat. § 227.11(2)(a). When an agency issues a rule pursuant to its rule-making authority, that rule has the effect of law. Wis. Stat. § 227.01(13). Our analysis reveals that the administrative code is ambiguous.

¶ 48. The Wisconsin Legislature granted DATCP the authority to promulgate regulations to implement Chapter 93 through Chapter 100 of the Wisconsin Statutes.[32] Pursuant to this rule-making authority, DATCP issued a rule that defined "motor vehicle fuel" in the Wisconsin Administrative Code as follows:

"Motor vehicle fuel" means any liquid prepared, adver-

[32] According to Chapter 93, it is the duty of DATCP

tised or sold for use as or commonly and commercially used as fuel in internal combustion engines.

Wis. Admin. Code § ATCP 105.001(4).

¶ 49. Orion asserts that DATCP properly promulgated a definition of "motor vehicle fuel" that indicates that aviation fuel constitutes motor vehicle fuel, and that the definition is entirely consistent with the purposes of the Unfair Sales Act.[33] According to Orion, the only limitation on motor vehicle fuel under ATCP § 105.001(4) is that the fuel must be used in an internal combustion engine, and this limitation does not exclude aviation fuel. Orion contends that the court of appeals ignored the clear and unambiguous definition of motor vehicle fuel in § ATCP 105.001(4). Orion further contends that Basler was required to first file a separate declaratory judgment action to invalidate the rule under Wis. Stat. § 227.40.[34]

¶ 50. In contrast, Basler contends that the court of appeals correctly rejected Orion's argument that the DATCP regulation should be read expansively to in-

---

To make and enforce such regulations, not inconsistent with law, as it may deem necessary for the exercise and discharge of all the powers and duties of the department, and to adopt such measures and make such regulations as are necessary and proper for the enforcement by the state of chs. 93 to 100, which regulations shall have the force of law.

Wis. Stat. § 93.07(1).

[33] Orion also asserts that the legislature ratified DATCP's definition when it amended the Unfair Sales Act. Because we find the code ambiguous, we do not reach this issue.

[34] Under this statute, "the exclusive means of judicial review of the validity of a rule shall be an action for declaratory judgment as to the validity of such rule brought in the circuit court for Dane County." Wis. Stat. § 227.40.

447

clude aviation fuel. According to Basler, the history of the regulation demonstrates that DATCP used Chapter 78 to create the definition, intending to limit "motor vehicle fuel" to fuel used by conveyances that are "self-propelled by an internal combustion engine or motor and licensed for highway use . . . ." Wis. Stat. § 78.03(1) (1990). In addition, Basler asserts that the history of the rule is consistent with DATCP's interpretations in its warning letter to Basler. In response to Orion's assertion that the court lacks competence to proceed because Basler failed to file a declaratory judgment action under Wis. Stat. § 227.40, Basler contends that this statute only applies when a party seeks to invalidate a rule and Basler is not seeking to invalidate a rule.

¶ 51. Because administrative code provisions are subject to rules of statutory construction, *Basinas,* 104 Wis. 2d at 546, we do not reach the history of § ATCP 105.001, on which Basler relies, unless we find the rule ambiguous. Under § ATCP 105.001(4), "motor vehicle fuel" includes "any liquid" that is used in an "internal combustion engine." The definition is silent with regard to general aviation fuel. Moreover, the code provision makes no reference to aviation gasoline or jet turbine fuel. The code provision, therefore, fails to clarify the same term used in the statute that we concluded was susceptible to more than one reasonable interpretation with regard to aviation fuel. Like a statute, "[a] rule is ambiguous if reasonable persons can understand it differently." *Staples,* 142 Wis. 2d at 354. We conclude that the code provision is ambiguous as to whether "motor vehicle fuel" includes aviation fuel. We therefore turn to the history of the formation of Wis. Admin. Code § ATCP 105.001(4) and the agency's interpretations of

the regulation to determine the agency's intent and resolve the ambiguity in § ATCP 105.001(4).

¶ 52. An analysis of the history of Wis. Admin. Code § ATCP 105.001 reveals that DATCP intended to make the definition of "motor vehicle fuel" consistent with Chapter 78, excluding aviation fuel from the definition.

¶ 53. On May 24, 1989, DATCP submitted proposed Rule 89–91 to the Wisconsin Legislative Council staff for review.[35] This proposed rule was ultimately promulgated as Wis. Admin. Code § ATCP 105.001.

¶ 54. On June 22, 1989, after completing its analysis, the Legislative Council sent to DATCP a Clearinghouse Report on Rule 89–91.[36] In the Clearinghouse Report, the Legislative Council wrote: "It is not clear why the term 'motor vehicle fuel' is used instead of 'motor fuel' or why a separate definition of the term is created instead of using the statutory definition of 'motor fuel' contained in s. 78.04, Stats." Clearinghouse Report, Rule 89–91 Comments, June 22, 1989.

¶ 55. In a letter to Senator Fred Risser and then-Assemblyman Thomas Loftus, sent March 5, 1990, Howard C. Richards, then-Secretary of DATCP, addressed these requests for clarification posed in the Legislative Council Clearinghouse Report regarding the

---

[35] Wis. Stat. § 227.15(1) ("Prior to a public hearing on a proposed rule . . . an agency shall submit the proposed rule to the legislative council staff for review . . . ."). This statute has not changed and was in effect in 1989.

[36] *Id.*

agency's definition of motor vehicle fuel in proposed Rule 89–91.[37] Secretary Richards stated:

> [T]hese phrases have different meanings and [] the unfair sales act specifically refers to "motor vehicle fuel" [draft], not "motor fuel". "Motor fuel" is defined in s. 78.04, Stats., to cover only gasoline and some naphthas. It *excludes* diesel and other special fuels, while "motor vehicle fuel," according to the definition of "motor vehicle" in s. 78.03(1) [89–90], Stats., *includes* diesel and other special fuels. These terms are not synonymous, and the distinction between them must be taken into consideration . . . .

Howard C. Richards, Secretary of DATCP, Notice and Report of Proposed Adoption of Rules Relating to Enforcing the Unfair Sales Act, ch. Ag 119, Wis. Admin. Code (Clearinghouse Rule No. 89–91), March 5, 1990 (emphasis in original).[38]

¶ 56. As stated above, Wis. Stat. § 78.005(12), like the former § 78.03(1),[39] defines "motor vehicle":

> "Motor vehicle" means any automobile, truck, truck-tractor, tractor, bus, vehicle or other conveyance that is self-propelled by an internal combustion engine or motor and *licensed for highway use,* except that "motor vehicle" does not include mobile machinery and equipment.

Wis. Stat. § 78.005(12) (emphasis added).

---

[37] Wis. Stat. § 227.19(2) ("An agency shall submit a notice to the presiding officer of each house of the legislature when a proposed rule is in final draft form."). This statute has not changed and was in effect in 1989.

[38] We note that ch. Ag 119, Wis. Admin. Code was later renamed Agriculture Trade and Consumer Protection Chapter 105 of the Wisconsin Administrative Code ("§ ATCP 105").

[39] Section 78.03(1) (1989–90), Stats., was renumbered as § 78.005(12) in 1993. 1993 Wis. Act 16, § 1862.

¶ 57. The rule was referred to the committee on Commerce and Consumer Affairs on March 12, 1990. The review period ended without objection from the legislature,[40] and DATCP promulgated the rule, unchanged, effective September 1, 1990.

¶ 58. DATCP's March 5, 1990, letter to the legislature explaining its definition of "motor vehicle fuel" reveals the agency's intent in structuring its definition. The agency clearly intended to define the term "motor vehicle fuel" to include more than gasoline, but to limit the definition to ensure the administrative rule was consistent with Wis. Stat. § 78.03(1) (1989–90). As a result, in implementing this rule, DATCP limited the definition of "motor vehicle fuel" to gasoline, diesel, and other special fuels used to power vehicles that are "self-propelled by an internal combustion engine or motor and licensed for highway use"[41] as defined in Chapter 78.[42] This historical analysis clarifies that DATCP did not intend for general aviation fuel to fall within its definition of motor vehicle fuel.

2

¶ 59. We next examine DATCP's interpretation of the statute and the applicable portions of the administrative code as contained in its preliminary warning

---

[40] Wis. Stat. § 227.19(4)(e).

[41] Wis. Stat. § 78.005(12) (emphasis added).

[42] We note that three years after Wis. Admin. Code § ATCP 105.001 was promulgated, the legislature defined "motor vehicle fuel" in the Wisconsin Statutes for the first time. The definition reads: " 'motor vehicle fuel' means gasoline or diesel fuel." Wis. Stat. § 78.005(13); 1993 Wis. Act 16, § 1839.

letters to Basler. We conclude that DATCP's interpretations of the administrative code in this case offer no guidance for our analysis.

¶ 60. This court ordinarily gives deference to a state agency's settled "interpretation and application of its own administrative regulations unless the interpretation is inconsistent with the language of the regulation or is clearly erroneous." *Bergmann*, 211 Wis. 2d at 7 (citations omitted). Because the record in this case reveals that there is no settled agency interpretation, it is clear that the preliminary warning letters at issue in this case should not be given any deference. We therefore examine the meaning of the administrative code independently. *See Id.* at 8.

¶ 61. The record in this case indicates that there is no settled department interpretation of the regulation at issue. DATCP issued a preliminary warning letter informing Basler that "motor vehicle fuel" did not include aviation fuel, yet warned Basler that "any person who is injured as a result of a competitor selling *motor vehicle fuel* below cost may sue . . . ."[43] Moreover, hours after issuing this warning letter to Basler, DATCP retracted its conclusion that "motor vehicle fuel" did not include aviation fuel.[44] In this retraction, DATCP stated it needed to conduct "additional research on this question before we issue a final interpretation"

---

[43] Rod McNeil, Section 100.30, Wisconsin Statutes, The Unfair Sales Act *Warning Letter* Complaint number 4139, DATCP, March 21, 2003 (emphasis added).

[44] Rod McNeil, Retraction in part of warning letter issued March 21, 2003 in File Number 4139, DATCP, March 21, 2003. Basler asserts in its briefs and oral argument that this retraction was in response to communications between DATCP and Orion's attorney. Orion does not dispute this.

with regard to aviation fuel.[45] The record does not contain any "final interpretation" by DATCP.

¶ 62. Whether Wisconsin courts should give deference to a preliminary agency interpretation is irrelevant under the facts of this case, as no level of deference would be applicable to the inconsistent warning letters that were issued by DATCP. In its warning letters, DATCP's inconsistent interpretations of "motor vehicle fuel" under § ATCP 105.001 offer no guidance to this analysis. We draw no conclusions as to whether, in general, an agency's interpretations of a statute or an administrative code that is embodied in warning or opinion letters should be given deference by this court.[46] Our examination of these letters simply demonstrates the agency's confusion in interpreting the statute.

---

[45] *Id.*

[46] We note that the United States Supreme Court recently concluded that an agency's interpretation of an *unambiguous* regulation contained in an opinion letter, as opposed to interpretations that result from the adversarial process or an agency's explicit rule-making authority, "lack[s] the force of law [and therefore] do[es] not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (examining the agency's interpretation of its unambiguous regulation) (citations omitted). In *Chevron*, the United States Supreme Court concluded that when an agency's regulation represents a reasonable interpretation of the statute and does not conflict with the statute, the rule is entitled to deference. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44 (1984).

The Court also determined that even if an opinion letter is not entitled to deference, the letter is entitled to "respect" to the extent that the interpretation is persuasive. *Christensen*, 529 U.S. at 587 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

¶ 63. We have concluded that the definition of "motor vehicle fuel," promulgated by DATCP in § ATCP 105.001(4) excludes aviation fuel. The validity of this rule depends upon whether the rule exceeds the bounds of Wis. Stat. § 100.30. We therefore examine the legislative history of the statute in an effort to discern whether the rule is consistent with the statute. We conclude that the legislature intended to limit the

---

Yet, the Court continued, "an agency's interpretation of its own regulation is entitled to deference . . . when the language of the regulation is *ambiguous.*" *Christensen,* 529 U.S. at 588 (emphasis added) (citing *Auer v. Robbins ,* 519 U.S. 452, 461 (1997) (concluding that an agency interpretation of its own ambiguous regulation is controlling unless the interpretation is plainly erroneous or inconsistent with the regulation)). The United States Supreme Court did not address, however, the degree of deference due to an agency's interpretation of its ambiguous regulation in either *Auer* or *Christensen.*

In *Preston v. Meriter Hosp., Inc.,* this court applied *Chevron* deference to the DHHA's interpretation of 42 U.S.C. 1395dd(a), a federal statute. *Preston v. Meriter Hosp., Inc.,* 2005 WI 122, ¶¶ 28–38, 284 Wis. 2d 264, 700 N.W.2d 158.

Relying on *Christensen,* a Wisconsin federal court similarly concluded that because the regulation in question was ambiguous, the informal interpretation of that regulation by the agency that promulgated the regulation was entitled to some level of deference. *DeBraska v. City of Milwaukee,* 131 F. Supp. 2d 1032, 1034–35 (E.D. Wis. 2000) (examining the preamble to the regulations under review, a 1994 opinion letter by an administrator in the Department, and an amicus curiae brief filed on behalf of one of the parties in the case) (citing *Auer ,* 519 U.S. at 461).

We note that neither party briefed or argued this issue, and we decline to reach it.

application of the minimum markup provisions, and that "motor vehicle fuel" should be read narrowly to exclude aviation fuel.

¶ 64. In 1939, the Wisconsin Legislature enacted the Wisconsin Unfair Sales Act, Wis. Stat. § 100.30.[47] The 1939 Act established a minimum markup price of 3 to 6 percent for *all* merchandise sold in Wisconsin.[48] The Act was amended several times but remained relatively unchanged from its original form until 1986.[49]

¶ 65. In 1986, the legislature significantly amended the Unfair Sales Act. The original draft of 1985 Wis. Act 313, Assembly Bill 219, would have eliminated the minimum markup for all merchandise except for cigarettes sold by wholesalers and would have eliminated the requirement that all other merchandise be sold at cost or higher.[50] Assembly Bill 219 was amended in order to continue the markup for other tobacco products and motor vehicle fuel.[51] The bill was further amended to include fermented malt beverages, intoxicating liquor, and wine.[52] The bill was also

---

[47] 1939 Ch. 56.

[48] The Act prohibited any retailer or wholesaler from advertising, offering for sale, or selling *any* merchandise below "cost." Wisconsin's Unfair Sales Act: An Overview, Staff Brief 80–10, Wisconsin Legislative Council Staff, July 9, 1980 (emphasis added). "Cost" included a minimum markup of 3 percent for wholesalers and 6 percent for retailers for all merchandise. *Id.* This court concluded that the minimum markup scheme was constitutional. *Ross*, 259 Wis. 379.

[49] Legislative Council Staff Brief, July 9, 1980.

[50] Drafting Request, Representative Shoemaker, January 10, 1985.

[51] Legislative History of Assembly Bill 219.

[52] *Id.*

amended to continue to prevent vendors from selling all merchandise below cost.[53] Amendments that would have continued the minimum markup for "foreign owned companies"[54] and "groceries"[55] were rejected. The final revision to the Unfair Sales Act eliminated the minimum markup provisions for all merchandise except for "cigarettes or other tobacco products, fermented malt beverages, intoxicating liquor or wine or motor vehicle fuel."[56]

¶ 66. The legislative documents and news reports surrounding passage of the bill indicate that the final law, 1985 Wis. Act 313, constituted a compromise as to the particular merchandise that would retain the minimum markup calculations in their definitions of "cost."[57]

---

[53] Assembly Amendment 1 to Senate Substitute Amendment 1, adopted March 4, 1986.

[54] Assembly Amendment 2 to Senate Substitute Amendment 1, tabled March 4, 1986.

[55] Assembly Amendment 3 to Senate Substitute Amendment 1, tabled March 4, 1986.

[56] Revisions in the State Minimum Markup Law (1985 Wisconsin Act 313), Information Memorandum 86–12, Wisconsin Legislative Council Staff, May 9, 1986. The 1986 revision also made violations of the Act subject to civil forfeitures, rather than criminal penalties, and granted DATCP the authority to independently enforce the statute by bringing a claim in court or issuing a cease and desist order.

[57] *See, e.g.,* Charles E. Friederich, "Compromise on markup law advances," Milwaukee Journal, Feb. 28, 1986 ("The compromise, [then-Senator John Norquist] said, was necessary to get the bill through the Legislature."). *See also* "State grocers endorse markup-law changes," Wisconsin State Journal, March 8, 1986; "Markup bill: Legislature makes needed changes in outdated state law," Editorial, Green Bay Press Gazette, March 7, 1986; "Markup bill endorsed: Assembly OKs removal of 6 pct.

¶ 67. This history reveals that the legislature considered applying the minimum markup to various products and carefully crafted the amendment to limit the application of the minimum markup laws to particular merchandise.

¶ 68. In addition, as the court of appeals noted in this case, the 1986 amendment was the first time the term "motor vehicle fuel" was used in the Unfair Sales Act. *Orion,* 277 Wis. 2d 819, ¶ 26. Yet, when the legislature made this change, other provisions of Chapter 100 cross-referenced the term "motor vehicle" as defined in section 340:[58]

> "Motor vehicle" means a vehicle which is self-propelled, including a trackless trolley bus, except that a snowmobile shall only be considered a motor vehicle for purposes made specifically applicable by statute.[59]

Chapter 340 further defined "vehicle":

> "Vehicle" means every device in, upon or by which any person or property is or may be transported or drawn *upon a highway,* except railroad trains. A snowmobile shall not be considered a vehicle except for purposes made specifically applicable by statute.[60]

minimum on most items," Green Bay Press-Gazette, March 5, 1986; Neil H. Shively, "Bill backed to ease 6% markup law" Milwaukee Sentinel, March 5, 1986; Wayne Corey, Wisconsin Independent Businessmen, "Minimum markup law beefed up," The Capital Times, April 29, 1986.

[58] The same references to the definition of "motor vehicle" in Wis. Stat. § 340.01(35) in Chapter 100 exist under the current statutes. *See* Wis. Stat. §§ 100.205(1)(c); 100.21(1)(d); 100.42(1)(h) (2003–04).

[59] Wis. Stat. § 340.01(35) (1983–84).

[60] Wis. Stat. § 340.01(74) (1983–84) (emphasis added). The definitions of "motor vehicle" and "vehicle" are substantially the

¶ 69. We conclude that the legislature intended the term "motor vehicle fuel" to be read consistently with the terms "motor vehicle" and "motor vehicle fuel" as defined and used in other related statutes at the time the Unfair Sales Act was amended to include a minimum markup for "motor vehicle fuel." The term "motor vehicle fuel" should be read narrowly to evince this legislative intent. We therefore conclude that the term "motor vehicle fuel" does not include "aviation fuel."

## V

¶ 70. We conclude that "motor vehicle fuel" does not include aviation fuel, that the minimum markup provisions in Wis. Stat. § 100.30 do not apply to aviation fuel, and that Orion cannot rely on § 100.30(5m) for a private cause of action against Basler. We also conclude that § ATCP 105.001 is consistent with and does not exceed the bounds of Wis. Stat. § 100.30. We therefore affirm the court of appeals' decision.

*By the Court.*— The decision of the court of appeals is affirmed.

---

same today as they were when the Unfair Sales Act was amended in 1986. *See, supra,* ¶ 24.