STATE of Wisconsin, Plaintiff-Respondent,

v.

Wendy A. BROWN, Defendant-Appellant.

Court of Appeals

*No. 2009AP1822–CR. Submitted on briefs April 6, 2010.
—Decided July 7, 2010.*

2010 WI App 113

(Also reported in 789 N.W.2d 102.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *William E. Schmaal*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Sally L. Wellman*, assistant attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. Wendy Brown was found not guilty by reason of mental disease or defect of one charge of identity theft. She appeals a commitment order to institutional care and an order denying her motion for postcommitment relief. Brown argues the State presented insufficient evidence of a significant risk of "serious property damage" under WIS. STAT. § 971.17(3)(a). She contends serious property damage requires physical harm to an object. We disagree and affirm.

## BACKGROUND

¶ 2. Brown, age thirty-three, used her fifteen-year-old daughter's birth certificate and social security number to enroll as a student at Ashwaubenon High School. She participated in cheerleading activities and attended one day of classes. Brown told police "she wanted to get her high school [diploma] and be a cheerleader because she had no childhood and was trying to regain a part of her life she missed." Pursuant to a plea agreement, Brown was found not guilty by reason of mental disease or defect of one charge of identity theft contrary to Wis. Stat. § 943.201(2)(a).[1]

¶ 3. Dr. Ralph Baker examined Brown and reviewed written records. His report noted Brown had numerous prior convictions for forgery, burglary, theft, and theft by deception; abused cocaine, marijuana, and alcohol; and had previously been institutionalized in mental hospitals. Baker diagnosed Brown with bipolar II disorder, posttraumatic stress disorder, borderline personality disorder, avoidant personality disorder, and paranoid personality disorder, and opined Brown's fantasy of finishing high school and becoming a cheerleader became a delusion. Baker concluded Brown needed long-term treatment in a structured setting to address her nineteen-year history of forgery, burglary, and theft.

¶ 4. Matt Petersen, a Lutheran Social Services case manager, prepared a predisposition investigation report, relying primarily on an interview with Brown

---

[1] In a separate case, Brown pled no contest to one charge of forgery-uttering, and the State agreed to dismiss a charge of misdemeanor theft by fraud.

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

and his review of Baker's report. Peterson's report recommended institutional care, citing Brown's current lack of a psychiatric doctor, therapist, and AODA counselor.

¶ 5. The circuit court committed Brown to three years' institutional care, concluding conditional release would pose a significant risk of serious property damage because of her extensive history of financial and property crimes.[2] The court rejected Brown's argument that "serious property damage" only includes physical injury to, or destruction of, an object. Brown renewed her argument in a postcommitment motion, which the court denied.

## DISCUSSION

¶ 6. Although Brown describes her argument as a challenge to the sufficiency of the evidence, we are presented only with a question of statutory interpretation. The State does not argue the court's order for institutional care would be valid under the facts of this case if we were to adopt Brown's interpretation of WIS. STAT. § 971.17(3)(a). Similarly, Brown does not challenge the sufficiency of the evidence should we reject her interpretation.

¶ 7. Statutory interpretation presents a question of law that we decide without deference to the trial court's decision. *State v. Reed*, 2005 WI 53, ¶ 13, 280 Wis. 2d 68, 695 N.W.2d 315.

The purpose of statutory interpretation is to determine what a statute means in order to give the statute its

---

[2] The court also ordered Brown to serve three years' concurrent probation on the forgery-uttering charge.

full, proper, and intended effect. We begin with the statute's language because we assume that the legislature's intent is expressed in the words it used. Generally, language is given its common, ordinary, and accepted meaning. In addition, statutory language is interpreted in the context in which it is used, in relation to the language of surrounding or closely related statutes, and interpreted to avoid absurd or unreasonable results.

If the meaning is plain, we ordinarily stop the inquiry. However, if a statute is ambiguous, we examine extrinsic sources, such as legislative history, to ascertain the legislative intent. A statute is ambiguous if the statute's ability to support two reasonable constructions creates an ambiguity which cannot be resolved through the language of the statute itself.

*Orion Flight Servs., Inc. v. Basler Flight Serv.*, 2006 WI 51, ¶¶ 16–17, 290 Wis. 2d 421, 714 N.W.2d 130 (punctuation and citations omitted). Further, the common and approved meaning of words may be ascertained by reference to a recognized dictionary. *State v. Mattes*, 175 Wis. 2d 572, 578, 499 N.W.2d 711 (Ct. App. 1993); *see also* Wis. Stat. § 990.01(1).

¶ 8.   Wisconsin Stat. § 971.17(3)(a) provides, in relevant part:

An order for commitment under this section shall specify either institutional care or conditional release. The court shall order institutional care if it finds by clear and convincing evidence that conditional release of the person would pose a significant risk of bodily harm to himself or herself or to others or of serious property damage. If the court does not make this finding, it shall order conditional release.

246

¶ 9. Brown argues "serious property damage" requires *physical* injury or destruction of a significant nature. She asserts that in ordinary usage, a vehicle collision or house fire would be described as resulting in serious property damage, whereas a theft of money or valuable items would ordinarily not be described by such terms. She also objects to individual consideration of the three words' meaning, arguing this improperly excludes the context in which the language is used.

¶ 10. While we agree the statute's language must be considered in context, we reject Brown's assertion that we cannot consider the ordinary meaning of individual words when ascertaining the meaning of a phrase. Further, we consider "property damage" to be the critical language; "serious" merely describes the level, as opposed to the type, of harm. The level of harm necessary to satisfy the statutory standard is not disputed in this case.

¶ 11. Thus, we begin our analysis by reviewing the dictionary definitions of the terms property and damage.[3] As relevant, property is defined as:

> **a.** something that is or may be owned or possessed; wealth, goods ... **b.** the exclusive right to possess, enjoy, and dispose of a thing; a valuable right or interest primarily a source or element of wealth; ownership ... **c.** something to which a person has a legal title; an estate in tangible assets (as lands, goods, money) or intangible rights (as copyrights, patents) in which or to which a person has a right protected by law[.] (Punctuation altered.)

[3] All definitions provided herein are taken from WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 571, 1164, 1818 (unabr. 1993). The parties do not present competing dictionary definitions.

¶ 12. The relevant dictionary definition of damage is: "loss due to injury; injury or harm to person, property, or reputation; hurt, harm[.]" (Punctuation altered.) Additionally, the dictionary refers the reader to synonyms under "injury." There, the dictionary explains:

> INJURY, HURT, DAMAGE, HARM and MISCHIEF *mean in common the act or result of inflicting on a person or thing something that causes loss, pain, distress, or impairment.* INJURY is the most comprehensive, applying to an act or result involving an impairment or destruction of right, health, freedom, soundness, or loss of something of value . . . HURT applies chiefly to physical injury but in any application it stresses pain or suffering whether injury is involved or not . . . *DAMAGE applies to injury involving loss, as of property, value, or usefulness* . . . HARM applies to any evil that injures or may injure . . . MISCHIEF is used to avoid the suggestion or image of particular harm or injury, designating generally any misdoing or injury, esp. irresponsible, and stressing the role of an agent, usu. personal[.] (Emphasis added.)

¶ 13. The above definitions of property and damage are much broader than that which would be required to support Brown's limited interpretation of property damage. Property generally includes both tangible and intangible items, including land, goods, money, and information rights; while damage generally includes loss of, harm to, and reduction in value or usefulness of, property. Thus, considered in isolation from the statute, property damage would generally be understood to include losses of money or goods typically suffered as the result of theft, burglary, and fraud—the types of conduct at issue in this case.

■■■

¶ 14. Additionally, while Brown stresses context in her argument, she entirely ignores the larger statu-

tory context and manifest intent of the statute. WISCONSIN STAT. § 971.17(3)(a) requires institutionalization if release of the person poses a sufficient risk of either bodily harm or serious property damage, and compels conditional release in the absence of such risks. The clear purpose of the statute, then, is to protect the community, while imposing the least restrictive restraint of liberty consistent with that purpose. The specific clause we are construing, however, pertains solely to the community protection component.

¶ 15. Considering the statute's language in this context, Brown's interpretation is unreasonable. We discern no reason why the statute would seek to protect the public from physical injury or destruction of property, while subjecting it to the risk of the complete loss of goods, cash, or other assets. The injury suffered by a loss of property may be equal to or greater than that incurred from physical property damage, which may not completely devalue an item.

¶ 16. Finally, Brown argues we should interpret WIS. STAT. § 971.17(3)(a) as being limited to physical property damage because this would be consistent with the longstanding "definition of damage in crimes relating to the damage of property in Wisconsin," citing the jury instruction for WIS. STAT. § 943.01, criminal damage to property. Brown's citation, however, undermines, rather than supports, her argument. Section 943.01 prohibits the intentional "damage to any *physical* property of another." If the legislature wanted to limit § 971.17(3)(a) to physical property damage, it knew how to do so. Indeed, while the statute includes no language limiting the type of "property damage," the harm to persons is explicitly limited to the risk of "bodily," i.e., physical, harm. For the foregoing reasons,

we conclude "property damage" in § 971.17(3)(a) includes not only physical harm or destruction, but also loss of goods or money.

*By the Court.*—Orders affirmed.