Donna J. MURR,
Petitioner-Appellant-Cross-Respondent,†

v.

ST. CROIX COUNTY BOARD OF ADJUSTMENT,
Respondent-Respondent-Cross-Appellant,

STATE of Wisconsin,
Appellate-Intervenor-Respondent-Cross-
Appellant.

Court of Appeals

*No. 2008AP2728. Submitted on briefs November 30, 2010.
—Decided February 15, 2011.*

2011 WI App 29

(Also reported in 796 N.W.2d 837.)

† Petition for Review denied 5/24/11.

172

174

On behalf of the petitioner-appellant-cross-respondent, the cause was submitted on the briefs of *R. Michael Waterman* of *Mudge Porter Lundeen & Seguin, S.C.*, Hudson.

On behalf of the respondent-respondent-cross-appellant, the cause was submitted on the brief of *Donald J. Gillen*, assistant corporation counsel of Hudson.

On behalf of the combined brief of appellate-intervenor-respondent-cross-appellant, the cause was submitted on the briefs of *Lorraine C. Stoltzfus*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. Donna Murr appeals a circuit court judgment that affirmed in part, and reversed in part, a St. Croix County Board of Adjustment decision denying Murr's request for six variances and two special

exception permits. The Board and the State of Wisconsin (collectively, the Board) cross-appeal.[1]

¶ 2. Murr argues a St. Croix County ordinance that mirrors Wis. Admin. Code § NR 118.08(4) does not apply to merge her two contiguous parcels, because the parcels did not come under common ownership until after the effective date identified in the ordinance.[2] We disagree and conclude the ordinance applies to all abutting properties that existed on the specified date, regardless of when they come under common ownership. We therefore affirm the portion of the judgment affirming the Board's decision on that issue.

¶ 3. In its cross-appeal, the Board asserts its decision was proper in all respects and contends the circuit court applied an incorrect standard of review, substituting its judgment for that of the Board. We agree and reverse the portion of the judgment reversing the Board's decision.

## BACKGROUND

¶ 4. Murr's parents purchased a lot on the St. Croix River in 1960. After building a cabin near the river, they transferred title to their plumbing company. In 1963, Murr's parents purchased an adjacent lot, which has remained vacant ever since. The approximately one and one-quarter acre lots are moderately level at the top and at the river, but are bisected by a steep 130 foot bluff, with the top and bottom of the lots being served by separate roads. The two lots contain

---

[1] The State has intervened on appeal.

[2] All references to Wis. Admin. Code ch. NR 118 are to the June 2006 version.

approximately .48 and .50 acres of net project area.[3] The lots were transferred to Murr and her siblings in 1994 and 1995.[4]

¶ 5. Due to repeated flooding, Murr sought to reconstruct the cabin on higher ground by using fill. She initially planned to build in the same location. However, as suggested by a town planning commission, Murr ultimately requested to build further from the river to reduce the environmental impact. Murr requested the following eight variances or special exception permits: (1) variance to sell or use two contiguous substandard lots in common ownership as separate building sites; (2) variance to reconstruct and expand a nonconforming structure outside its original footprint; (3) variance to fill, grade, and place a structure in the slope preservation zone; (4) special exception to fill and grade within forty feet of the slope preservation zone; (5) special exception to fill and grade more than 2000 square feet; (6) variance to construct retaining walls and stairs inside the ordinary high-water mark setback; (7) variance to reconstruct a patio within the ordinary high-water mark setback; and (8) variance to construct a deck within the ordinary high-water mark setback.

¶ 6. The Board conducted a public hearing at which the DNR and county zoning staff opposed Murr's application. The Board denied all of Murr's requests in a written decision. Murr sought WIS. STAT. § 59.694(10)[5] certiorari review before the circuit court. After hearing

---

[3] " 'Net project area' means developable land area minus slope preservation zones, floodplains, road rights-of-way and wetlands." WIS. ADMIN. CODE § NR 118.03(27).

[4] As Donna Murr is the only named party, we refer to her singly in this decision.

[5] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

arguments and viewing the property, the circuit court affirmed the Board's denial of Murr's request to sell or use the two lots as separate building sites. However, the court reversed the Board on the remaining seven requests. Murr now appeals, and the Board cross-appeals, the circuit court decision.

## DISCUSSION

¶ 7. Certiorari review under WIS. STAT. § 59.694(10) is limited to: (1) whether the board kept within its jurisdiction; (2) whether it proceeded on a correct theory of law; (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the board might reasonably make the order or determination in question based on the evidence. *Klinger v. Oneida Cnty.*, 149 Wis. 2d 838, 843, 440 N.W.2d 348 (1989).

*Merger of Lots*

¶ 8. Murr asks us to interpret ST. CROIX COUNTY, WI, CODE OF ORDINANCES, LAND USE AND DEVELOPMENT, SUBCHAPTER III.V, LOWER ST. CROIX RIVERWAY OVERLAY DISTRICT § 17.36I.4.a. (July 1, 2007), and decide whether it applies to her situation.[6] Murr's challenge appears to question whether the Board proceeded under the correct theory of law.[7]

---

[6] Murr also argues the Board improperly found that the two contiguous properties were under common ownership on the effective date specified in the ordinance. The Board concedes in its brief that the properties were separately owned until after that date.

[7] While Murr challenges the ordinance's application to her, she does not argue the Board erred by denying a variance if the ordinance applies.

179

¶ 9. The rules for construction of statutes and ordinances are the same. *Sauk County v. Trager*, 113 Wis. 2d 48, 55, 334 N.W.2d 272 (Ct. App. 1983). Statutory interpretation presents a question of law that we decide without deference to the trial court's decision. *Orion Flight Servs., Inc. v. Basler Flight Serv.*, 2006 WI 51, ¶ 16, 290 Wis. 2d 421, 714 N.W.2d 130. The purpose of statutory interpretation is to determine what a statute means in order to give the statute its full, proper, and intended effect. *Id.* Generally, language is given its common, ordinary, and accepted meaning. *Id.* In addition, statutory language is interpreted in the context in which it is used, in relation to the language of surrounding or closely related statutes, and interpreted to avoid absurd or unreasonable results. *Id.*

¶ 10. WISCONSIN STAT. § 30.27(1), consistent with federal code provisions identified therein, recognizes the Lower St. Croix River as part of the national wild and scenic rivers system. Subsection 30.27(2) requires the DNR to "adopt, by rule, guidelines and specific standards for local zoning ordinances which apply to the banks, bluffs and bluff tops of the Lower St. Croix River." Subsection 30.27(3), in turn, requires all affected municipalities to adopt ordinances at least as restrictive as those adopted by the DNR. St. Croix County adopted an ordinance essentially mirroring WIS. ADMIN. CODE § NR 118.08(4). The ordinance provides:

> **(4) SUBSTANDARD LOTS** Lots of record in the Register Of Deeds office on January 1, 1976 or on the date of the enactment of an amendment to this subchapter that makes the lot substandard, which do not meet the requirements of this subchapter, may be allowed as building sites provided that the following criteria are met:

(a) 1. The lot is in separate ownership from abutting lands, or

2. The lot by itself or in combination with an adjacent lot or lots under common ownership in an existing subdivision has at least one acre of net project area. Adjacent substandard lots in common ownership may only be sold or developed as separate lots if each of the lots has at least one acre of net project area.

(b) All structures that are proposed to be constructed or placed on the lot and the proposed use of the lot comply with the requirements of this subchapter and any underlying zoning or sanitary code requirements.

St. Croix County, WI, Code of Ordinances, Land Use and Development, Subch. III.V, Lower St. Croix Riverway Overlay District § 17.36I.4.a. (July 1, 2007) (internal lettering and numbering modified);[8] *see also* Wis. Admin. Code § NR 118.08(4).

¶ 11. Murr argues that any existing substandard lot that was not under common ownership on January 1, 1976, remains forever exempt under the ordinance, regardless of whether it subsequently comes under common ownership with an abutting lot. Murr asserts this case involves the doctrine of merger, and relies on principles of law set forth in treatises, *see* 3 Rathkopf's The Law of Zoning and Planning § 49.13 (4th ed. 2008); 2 Anderson's American Zoning § 9.67 (4th ed. 2006), and foreign state cases. Based on those authorities, Murr contends the ordinance was required to include an "explicit merger clause." We reject Murr's reliance on

---

[8] The internal paragraph lettering and numbering of the ordinance is illogical and potentially confusing. Therefore, we have substituted that of the administrative code. The paragraph structure is the same in both provisions.

nonbinding authority to create ambiguity in the ordinance. The administrative code provision on which the ordinance is based is not a model of clear draftsmanship. Nonetheless, we discern no ambiguity in its application here, and we reject as unreasonable Murr's interpretation that the ordinance applies only to lots that were under common ownership on the effective date.[9]

¶ 12. Paraphrased, the first paragraph of the ordinance states: "Lots that are already in existence (i.e., those on record with the register of deeds) when the riverway district ordinance declares them substandard may be allowed as building sites if the following criteria are met." Nothing in that paragraph ties either the initial January 1, 1976 effective date or potential future effective dates to the subsequently listed criteria. The date simply establishes the point in time by which the lot must have been recorded to be eligible under the subsection's exception for building on substandard lots.

[9] We observe, however, that the ordinance and WIS. ADMIN. CODE § NR 118.08(4)(a)2. appear to prohibit any building when, *as here,* two substandard, commonly owned lots combined still contain less than one acre of net project area. Yet, subd. (a)1. would permit building on both lots if they were separately owned, regardless of their individual amounts of net project area. This would lead to the seemingly absurd result that an owner of two adjacent properties would be prevented from building even one home, while an owner of a single substandard lot would be entitled to build. We assume without deciding that subd. (a)2. intends that where multiple abutting lots are commonly owned, individual lots must be merged into a single building site until at least one acre of net project area is attained, but that if all commonly owned lots do not contain the minimum net project area, they shall together suffice as a single buildable lot. This assumption is significant to our interpretation of the subsection's manifest intent.

¶ 13. Accordingly, neither subds. (a)1. or (a)2., which are specifically at issue in this case, refer to any particular date. Moreover, these subdivisions utilize the present tense. If the DNR or local zoning authority had intended these provisions to apply only to the facts as they existed on the effective date, then they likely would have said so, and would have used the past tense.[10] Use of the present tense, on the other hand, indicates the criteria are to be applied to the state of facts existing at the time an owner seeks to sell or build.

[8]

¶ 14. Our interpretation is also consistent with the manifest intent of the ordinance and WIS. ADMIN. CODE § NR 118.08(4), to preserve property values while limiting environmental impacts. The stated purposes of the riverway district ordinances and ch. NR 118 are to:

> (1) Reduc[e] the adverse effects of overcrowding and poorly planned shoreline and bluff area development. (2) Prevent[] soil erosion and pollution and contamination of surface water and groundwater. (3) Provid[e] sufficient space on lots for sanitary facilities. (4) Minimiz[e] flood damage. (5) Maintain[] property values. (6) Preserv[e] and maintain[] the exceptional scenic, cultural, and natural characteristics of the water and related land of the Lower St. Croix Riverway . . . .

ST. CROIX COUNTY, WI, CODE OF ORDINANCES, LAND USE AND

---

[10] Thus, for example, to be interpreted as Murr suggests, subd. (a)1. of the ordinance would have instead stated, "The lot [was] in separate ownership from abutting lands [on the effective date] . . . ." Similarly, subd. (a)2. would have stated: "The lot . . . or lots under common ownership . . . [had] at least one acre . . . . Adjacent substandard lots [that were] in common ownership [on the effective date] may only be . . . developed . . . if each . . . [had] at least one acre of net project area [on the effective date]. *See also* WIS. ADMIN. CODE § NR 118.08(4).

Development, Subch. III.V, Lower St. Croix Riverway Overlay District § 17.36B.1.a. (July 1, 2007); Wis. Admin. Code § NR 118.01; *see also* Wis. Stat. § 30.27(1) (purpose is "to guarantee the protection of the wild, scenic and recreational qualities of the river for present and future generations"). We agree with the State that the intent of the exception for existing lots is to "protect[] people who acquire the property before the ordinance was passed from being deprived of their property value." When the provision became effective, every person who already owned a lot could still build. If the lot was too small under the new rule, that was acceptable; owners could still build on their lot or sell it as a developable lot. However, if the substandard lot owner owned an adjacent lot as well, then the lots were effectively merged and the owner could only sell or build on the single larger lot. This result preserved both property values and the environment.

¶ 15. Murr's interpretation is inconsistent with the manifest intent of the ordinance and Wis. Admin. Code § NR 118.08(4) because it (1) does nothing to preserve property values, (2) unnecessarily and arbitrarily provides greater rights to subsequent substandard lot owners than to those who owned at the time of the provisions' effective date, and (3) fails to preserve the visual and ecological environment.

¶ 16. Because the provisions are already effective prior to subsequent owners' acquisition of their lots, there is no concern that the provisions would deprive those persons of their property. Any effect on property values has already been realized.

¶ 17. Further, because Murr is charged with knowledge of the existing zoning laws, *see State ex rel. Markdale Corp. v. Board of Appeals of Milwaukee*, 27 Wis. 2d 154, 162, 133 N.W.2d 795 (1965), as a subse-

184

quent owner she was already in a better position than any person who owned at the provisions' effective date. Unless she or a subsequent owner brought her vacant lot under common ownership with an adjacent lot, that parcel would forever remain a distinct saleable, developable site. Unlike those who owned on the effective date, she had the option to acquire, or not acquire, an adjacent lot and merge it into a single more desirable lot.

¶ 18. Finally, merger of adjacent substandard lots that come under common ownership will preserve the environment in the same ways that merger of lots already under common ownership would do. The failure to merge would have the opposite effect, with no countervailing property value concern.[11]

*Cross-appeal opposing circuit court order to grant variances and special exceptions*

¶ 19. The Board argues that the circuit court improperly substituted its judgment for that of the Board, and that the Board's denials of Murr's variance and special exception requests must be affirmed under the proper standard of certiorari review.[12] *See Klinger*, 149 Wis. 2d at 843. As a general rule, in certiorari proceedings the appellate court reviews the decision of the agency, not the circuit court. *Id.* at 845 n.6, 846.

---

[11] The Board's response brief repeatedly refers to Murr as plaintiff. We remind counsel that references should be to names, not party designations. *See* WIS. STAT. RULE 809.19(1)(i).

[12] The Board did not file its own cross-appeal brief. Instead, it adopted the arguments set forth in the State's cross-appeal brief.

[WISCONSIN STAT. § 59.694(10)] explicitly allows, however, the circuit court to take evidence "if necessary for the proper disposition of the matter." The statute thus broadens the scope of review by way of certiorari by granting the circuit court discretion to take and consider evidence when it shall appear "necessary" to do so.

*Id.* at 846.[13] Nonetheless, if the circuit court takes evidence that is substantially the same as that taken by the Board, deference to the Board demands that the evidentiary hearing should be treated as a nullity for purposes of determining the standard of review to be applied to the Board's decision. *Id.* at 845.

¶ 20. Here, the circuit court supplemented the Board record in two respects: it viewed the property and it received the Board's record concerning a variance request recently granted to a neighboring property owner. The State contends the evidence the court received was substantially the same as the evidence received by the Board and should therefore not affect the standard of review.

¶ 21. We agree the property viewing added nothing new to the evidentiary record because the Board too had visited the property. *See Block v. Waupaca Cnty. Bd. of Zoning Adjust.*, 2007 WI App 199, ¶ 4 n.5, 305 Wis. 2d 325, 738 N.W.2d 132. We also agree that the circuit court's review of the neighbor's record did not constitute a proper basis on which the court could rely to substitute its judgment for that of the Board. *See Miswald v. Waukesha Cnty. Bd. of Adjust.*, 202 Wis. 2d

---

[13] *Klinger v. Oneida Cnty.*, 149 Wis. 2d 838, 843, 440 N.W.2d 348 (1989), involved WIS. STAT. § 59.99(10) (1987–88), which has been renumbered to WIS. STAT. § 59.694(10). *See* 1995 Wis. Act 201, § 479.

401, 413–14, 550 N.W.2d 434 (Ct. App. 1996) (board of adjustment's treatment of a different property owner's variance request cannot render its action arbitrary, oppressive, or unreasonable).

¶ 22. We therefore apply the ordinary certiorari standard of review. *See Klinger*, 149 Wis. 2d at 843. Murr argues the Board's decision was not reasonably supported by the evidence because "the interplay of several regulations makes it impossible for the Murrs to floodproof the cabin without some type of variance or special exception permit." We conclude, however, that Murr's requests to relocate and rebuild her home in a new location were simply a matter of convenience. Personal inconvenience alone does not constitute the unnecessary hardship required to grant variances. *See Snyder v. Waukesha Cnty. Zoning Bd.*, 74 Wis. 2d 468, 474–75, 478–79, 247 N.W.2d 98 (1976).

¶ 23. As the Board emphasizes, the record shows Murr could have floodproofed her current home in its existing footprint. In fact, the Board lays out two alternatives that were available to Murr, and that were presented to her early in the process. One alternative, to floodproof and remodel the existing home, would not have required any variances or special exception permits. The second, whereby Murr would demolish and reconstruct her home atop fill, would have required only two special exception permits and one variance, as compared to the seven variances or special exceptions required under her current plan.[14] Moreover, because Murr never sought the variance and special exception

[14] Murr's eighth request, to separately develop or sell her two substandard lots, was independent of the requests necessary to relocate and reconstruct her home.

permits required for the second alternative, those requests are not before us for review.

¶ 24. "We accord a presumption of correctness and validity to the decision of the board when reviewing a decision by statutory certiorari." *Miswald*, 202 Wis. 2d at 408. Here, there was ample evidence on which the Board could reasonably rely to deny Murr's requests. *See Snyder*, 74 Wis. 2d at 476 (board's findings may not be disturbed if any reasonable view of the evidence sustains them).

*By the Court.*—Judgment affirmed in part; reversed in part.