Catherine TRIMBOLI, Daniel Carter, Tricia Carlson, Bryan Frankowiak and Colin Briggs, Plaintiffs-Appellants,

v.

COUNTY OF MILWAUKEE, Milwaukee County Sheriffs' Department and Milwaukee Deputy Sheriffs' Association, Defendants-Respondents.

Court of Appeals

*No. 2010AP2833. Submitted on briefs November 11, 2011. —Decided January 4, 2012.*

2012 WI App 16

(Also reported in 810 N.W.2d 845.)

192

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *John F. Fuchs* and *Rebecca D. Boyle* of *Fuchs & Boyle, S.C.*, of Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Molly J. Zillig*, principal assistant corporation counsel.

On behalf of the defendant-respondent Milwaukee Deputy Sheriffs' Association, the cause was submitted on the brief of *Christopher J. MacGillis* and *Ryan S. MacGillis* of *MacGillis Wiemer, LLC*, of Wauwatosa.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J. Catherine Trimboli, along with Daniel Carter, Tricia Carlson, Bryan Frankowiak, and Colin Briggs (all of whom we hereafter collectively refer to as "Trimboli"),[1] appeals the order denying her summary judgment motion requesting a declaration that she is a permanent, regularly-appointed sergeant. The trial court determined that Trimboli is not a permanent, regularly-appointed sergeant because the examination she took to obtain her promotion was void from its inception; specifically, because the announcement advertising the examination did not post the subjects and weights for the examination as required by Milwaukee County Civil Service Rules and *Milwaukee Deputy Sheriff's Association v. Charles McDowell*, No. 2005CV10598 (Milwaukee County Cir. Ct. Dec. 13, 2005), the examination was null and void, and the results of the examination had no effect. Trimboli argues that the trial court erred in making this deter-

---

[1] Throughout this opinion, we refer to the County of Milwaukee as "the County," the Milwaukee County Sheriff's Department as "the Sheriff's Department," and the Milwaukee Deputy Sheriff's Association as "the Association." We also refer to the Milwaukee County Department of Human Resources—who is not a party but whom we mention several times—as "the Human Resources Department."

mination because the examination results were not formally challenged until after the Sheriff posted a list of eligible applicants who had passed the examination, which Trimboli claims is prohibited under Milwaukee County Civil Service Rule III, Section 10. She also argues that the County's reclassification of her status as "temporary" while it attempted to ameliorate the examination announcement debacle violated state statutes and county civil service rules, and that she is therefore entitled to an order declaring and adjudicating her status as a permanent, regularly-appointed sergeant. We disagree with Trimboli and affirm the trial court's order.

## I. BACKGROUND.

¶ 2. In early 2008, the Sheriff's Department asked the Human Resources Department to create an announcement for the position of Deputy Sheriff Sergeant. Pursuant to *McDowell*[2] and Milwaukee County Civil Service Rule (generally referred to hereafter as

---

[2] *Milwaukee Deputy Sheriff's Association v. Charles McDowell*, No. 2005CV10598 (Milwaukee County Cir. Ct. Dec. 13, 2005), is a case in which the Association filed suit because the 2005 promotional examination for Deputy Sheriffs was conducted without the schedule of the subjects and weights first being posted on the examination announcement. By stipulation, the County agreed to void the 2005 examination derived from the flawed announcement. The County also stipulated that:

> Defendant McDowell and his successors in the position of Director of Human Resources shall establish the subjects and weights for all open or promotional examinations for classified positions with the Milwaukee County Sheriff's Department that affect members of the [Association] at or before the time such examination is advertised, in conformity with Rule III, Section 5, and each such examination shall be administered and graded consistent with the schedule of subjects and weights thus established.

*See id.* at 2.

"Rule") III, Section 5,[3] this announcement was to list both the "subjects" and "weights" for the exam. In other words, the announcement should have informed the test-takers what the examination would be based on and what weighted percentage each portion of the examination would receive. Unfortunately, the announcements, posted first on February 18, 2008, and later on March 13, 2008, listed neither the subjects nor the weights for the exam.

¶ 3. After discovering that the 2008 examination announcement was flawed, the Association, which represents deputy sheriffs and deputy sheriff sergeants on a wide range of issues, decided to challenge the examination. On July 31, 2008, the Association notified the County that it believed that the examination announcement violated *McDowell* and the Milwaukee County Civil Service Rules. Despite the Association's warning, the County produced a list of candidates eligible for promotion on August 5, 2008. About two weeks later, on August 18, 2008, Trimboli was promoted to the regular position of sergeant for the Sheriff's Department.

¶ 4. In a further attempt to address any potential issues regarding the examination announcement, the Association proposed a settlement on September 10,

---

[3] Milwaukee County Civil Service Rule III, Section 5—titled "SUBJECT AND WEIGHTS"—provides, in pertinent part:

> Examinations shall be practical in their character and shall relate to such matters as will test fairly and practically, the ability of each applicant to fulfill the requirements of the classification to which he seeks to be appointed . . . . Each examination shall embrace certain subjects to which weights shall be assigned, the weights given to each subject to represent its relative value in ascertaining the fitness of applicants. The subjects and respective weights . . . shall conform to such schedule of subjects and weights . . . as shall be set by the Director of Human Resources for each examination at the time of advertising.

2008. Under the proposed offer, the Association would agree to allow Trimboli to remain in her position as a regular sergeant if the County would agree to change the language of the Association's contract. The proposed changes, among others, would require that the County agree that the person holding the office of president of the Association be scheduled to work only Monday through Friday. On the other hand, if the County was unwilling to accept the Association's proposed changes, the Association would demand that the examination process be redone, and that, as a result of the flawed examination announcement, Trimboli would be reclassified to a temporary position pending the outcome of a new exam.

¶ 5. On September 24, 2008, the Director of Human Resources notified Trimboli that because the examination announcement did not comply with Rule III, Section 5, the County was abolishing the current eligibility list and planned to administer a new examination. The County consequently reclassified Trimboli to a temporary sergeant position "pending the creation of a new eligible list from which candidates may receive a regular appointment."

¶ 6. Trimboli consequently sued the County, the Sheriff's Department, and the Association. As pertinent to this appeal, Trimboli sought a declaratory order from the trial court declaring her status as a permanent, regularly-appointed sergeant. Trimboli's complaint also sought "an injunction permanently enjoining the County . . . from removing or separating" her "from such rights, entitlements, and duties attendant with the rank of sergeant," as well as a writ of mandamus directing all defendants to recognize and maintain her rank as sergeant. Trimboli's complaint further alleged a claim of breach of duty of fair representation against the Association.

198

¶ 7. All parties filed cross-motions for summary judgment. On August 31, 2010, the trial court issued a decision and order denying Trimboli's request for declaratory relief. That decision found that because the 2008 examination announcement was flawed, the eligible and certification list resulting from the examination could not stand. Based on these findings, the trial court dismissed all of Trimboli's claims against the County and the Sheriff's Department, and all of Trimboli's claims against the Association, except for her breach of duty of fair representation claim. This appeal follows.

## II. ANALYSIS.

¶ 8. On appeal, Trimboli asks that we overturn the trial court's order denying her declaratory judgment motion. Whether to grant or deny declaratory relief is generally a matter within the trial court's discretion, and we uphold the trial court's discretionary decision unless the court erroneously exercised its discretion. *See Jones v. Secura Ins. Co.*, 2002 WI 11, ¶ 19, 249 Wis. 2d 623, 638 N.W.2d 575. When the appropriateness of granting or denying declaratory relief depends on a question of law, however, we review the matter *de novo,* while benefiting from the trial court's analysis. *Gulmire v. St. Paul Fire & Marine Ins. Co.*, 2004 WI App 18, ¶ 10, 269 Wis. 2d 501, 674 N.W.2d 629. Because the trial court's decision rested upon its interpretation of Milwaukee County Civil Service rules and case law, we review Trimboli's appeal *de novo. See Marder v. Board of Regents of the Univ. of Wisconsin Sys.*, 2005 WI 159, ¶ 19, 286 Wis. 2d 252, 706 N.W.2d 110.

¶ 9. Specifically, Trimboli submits two reasons why we ought to overturn the trial court's order. First, she argues that she is entitled to a declaration that she is a permanent, regularly-appointed sergeant because the instant challenge to the examination announcement process was prohibited by Rule III, Section 10. Second, Trimboli argues that she is entitled to a declaration that she is a permanent, regularly-appointed sergeant because, under state statutes and county civil service rules, her reassignment to a temporary position was void. Because our review involves the application of civil service rules as well as statutes, our inquiry " 'begins with the language of the [rule or] statute.' " *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). We give statutory language "its common, ordinary, and accepted meaning," and give "technical or specially-defined words or phrases" "their technical or special definitional meaning." *See id.* We must also keep in mind that "[c]ontext is important to meaning. So, too, is the structure of the statute in which the operative language appears." *See id.*, ¶ 46. Therefore, we interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *See id.*

¶ 10. Pursuant to Rule III, Sections 1(1) and 1(4), job announcements must comply with "Federal and State laws as well as County ordinances and resolutions." Additionally, Rule I, Section 1(22), defines "[p]romotion" as:

a change from one classification to a classification in a higher pay range *and involves a change of duties and requires that an appointment be made in accordance with Rule IV, Section 1,*[4] *and other appropriate provisions in these Rules or County Ordinances.*[5]

(Underlining in original; some formatting altered.) Under these rules, if an appointment does not comply with appropriate provisions in the Rules or state law, there has been no promotion; in other words, a non-complying promotion is void.

¶ 11. The parties agree that the 2008 examination announcement violated Rule III, Section 5, and *McDowell*, which both require the Director of Human Resources to list the subjects and weights for promotional examinations. Rule III, Section 5 provides, in pertinent part:

Examinations shall be practical in their character and shall relate to such matters as will test, fairly and practically, the ability of each applicant to fulfill the requirements of the classification to which [the applicant] seeks to be appointed . . . . Each examination shall embrace certain subjects to which weights shall be assigned, the weights given to each subject to represent its relative value in ascertaining the fitness of applicants. The subjects and respective weights . . . shall conform to such schedule of subjects and weights . . . as shall be set by the Director of Human Resources for each examination at the time of advertising.

---

[4] Milwaukee County Civil Service Rule IV, Section 1, titled "REQUISITION, CERTIFICATION AND APPOINTMENT" outlines the procedure by which an appointing authority must notify the Director of Human Resources about an employment vacancy. As this section concerns actions that occur before an examination announcement is posted, it is not relevant to our analysis here.

[5] Available at: <http://county.milwaukee.gov/RuleIDefinitions 16178.htm.>

Under this provision, the Director of Human Resources has a mandatory requirement to publish the subjects and weights for the examination at the time of advertising the position. *See Matlin v. City of Sheboygan*, 2001 WI App 179, ¶ 5, 247 Wis. 2d 270, 634 N.W.2d 115 ("Use of the word 'shall' creates a presumption that the statute is mandatory.") (citing *Karow v. Milwaukee Cnty. Civil Serv. Comm'n*, 82 Wis. 2d 565, 570, 263 N.W.2d 214 (1978)). Similarly, the language of the stipulation in *McDowell* explicitly requires the Director of Human Resources to list the subjects and weights of the exam at or before the time the examination *is* announced. *See id.*, No. 2005CV10598, at 2. Furthermore, this stipulation expressly governs "classified positions within the Milwaukee County Sheriff's Department that affect members of [Trimboli's] union." *See id.*

¶ 12. Therefore, we conclude that because the examination announcement did not comply with Milwaukee County Civil Service Rules and *McDowell*, it was void. Under the current statutory scheme, examination applicants are entitled to know what the promotional examination will be based upon and what percentages each portion of the examination will receive. Doing so ensures transparency. Absent a predetermined schedule of subjects and weights, the examination could be scored in a *post facto* manner, and the Sheriff's Department could manipulate oral and written portions of the examination to ensure that certain applicants score higher than others. Consequently, we agree with the trial court that the results of the 2008 examination cannot stand.

¶ 13. We also agree with the County and the Sheriff that Milwaukee County General Ordinances §§ 17.02 and 17.13 support our conclusion. Section 7.02 defines a promotion as "a change from one (1) position

to a position of higher grade involving a change of duties and requir[ing] a competitive civil service examination." Section 17.13 states that a promotion "shall only be made after a competitive civil service examination." We agree that an examination cannot be competitive if the subjects and weights are not published to the participating applicants.

¶ 14. Furthermore, we are not persuaded by Trimboli's argument that—even though the 2008 examination announcement violated Rule III, Section 5 and *McDowell*—Rule III, Section 10, operates as a statute of limitations barring Respondents' claims because they did not file their claim prior to the posting of the eligibility list. As we have explained, the examination was void at its very inception; therefore this rule, which applies to examinations, has no force or effect in this particular case. Trimboli's reading of Rule III, Section 10 would have us apply the rule to an examination that—for all practical purposes—never existed. *See* BLACK'S LAW DICTIONARY 1604 (8th ed. 2004) (To be "void" is to have "no legal effect."); *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2562 (1993) (same). We think it absurd to apply a rule to something that does not exist, *see Kalal*, 271 Wis. 2d 633, ¶ 46, and therefore decline to apply Rule III, Section 10 to the instant case.

¶ 15. Moreover, turning our attention to the language of this particular section, we conclude that it refers to the procedure that must be applied when reviewing examinations, not to examination announcements. Rule III, Section 10 provides:

> In the absence of proof of fraudulent acts or false statements by an applicant, no examination or papers connected therewith *shall be subject to review after the posting of an eligible list resulting therefrom,* except

that the Director of Human Resources may correct clerical errors of examiners or errors made in calculating averages any time before the cancellation of such list; provided, however, that no person theretofore certified from such list shall be displaced by reason of such correction. Examination papers of any examination shall be preserved for a period of one year from the date of the examination, after which they may be destroyed if considered desirable.

(Emphasis added.) Nothing in the language of this section directly relates to the announcement process, which is, on the other hand, directly mentioned in Rule III, Sections 1 and 5. We also decline to read the phrase "papers connected [to examination]" to include an examination announcement. Such a reading would be far too broad given that the examples in this section—clerical errors and fraud by the applicant—pertain to situations involving the actual taking of the exam and/or calculating exam scores; they do not refer to the announcement process. *See Kalal*, 271 Wis. 2d 633, ¶¶ 45–46.

¶ 16. Furthermore, considering the context of Rule III, Section 10 within the general structure of the Civil Service Rules, we note that Rule III, Section 10, "Review of Examinations" (some capitalization omitted) is positioned many sections after Rule III, Section 1, titled "Announcement of Examination" (some capitalization omitted), which describes the examination announcement process in detail—further evidence that Rule III, Section 10 does not apply to situations in which an examination *announcement* is flawed. Moreover, contrary to what Trimboli argues, Rule III, Section 10 cannot be interpreted to mean that an "invalid" or "flawed" examination must stand unless immediately objected to because such an interpretation would con-

tradict and render meaningless the mandatory language of Milwaukee County Civil Service Rule I, Section 1, as well as Rule III, Sections 1, 4 and 5. We will not read Rule III, Section 10 in a way that renders several other sections void, or in a way that would produce absurd results, as Trimboli's suggested interpretation undoubtedly would have us do. *See Kalal*, 271 Wis. 2d 633, ¶¶ 45–46.

¶ 17. Finally, extending our analysis to case law yields nothing new. Trimboli cites no case law persuading us that Rule III, Section 10 ought to be interpreted in the fashion she proposes; in fact, for all of the reasons we explained above, the Civil Service Rules and *McDowell* compel the opposite result.

¶ 18. Simply stated, we agree with the trial court that the 2008 examination was void at its very origin— the examination announcement. The Milwaukee County Civil Service Rules, particularly, Rule III, Section 5, and *McDowell*, ensure that the examination process is fair, competitive, and transparent. We will not read the rules in any way that compromises these principles. We therefore hold that because the examination was void, Trimboli is not entitled to declaratory judgment, and we consequently affirm the trial court's order.

¶ 19. As a final matter, we also conclude that, because the examination was invalid at its very origin, Trimboli is not entitled to a declaration that she is a permanent, regularly-appointed sergeant under her theory that her reassignment to a temporary position was void. While Trimboli advances several arguments to support her position, we must reject them all because they derive from the incorrect presumption that her initial, August 18, 2008, promotion to the position of

205

regular sergeant was in fact valid. For the reasons we explained above, Trimboli's promotion was never valid.

*By the Court.*—Order affirmed.

¶ 20. FINE, J. (*dissenting*). In my view, there are two overriding principles that govern this case and require reversal. Accordingly, I respectfully dissent.

¶ 21. First, as the Majority recognizes, we must, absent an ambiguity or constitutional infirmity, apply statutes as they are written. *See State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶¶ 43–44, 271 Wis. 2d 633, 661–662, 681 N.W.2d 110, 123–124. This is also true of ordinances. *See Murr v. St. Croix County Bd. of Adjustment*, 2011 WI App 29, ¶ 9, 332 Wis. 2d 172, 180, 796 N.W.2d 837, 842.

¶ 22. Rule III, Section 10 of the Milwaukee County Civil Service Rules provides:

> In the absence of proof of fraudulent acts or false statements by an applicant, no examination or papers connected therewith shall be subject to review after the posting of an eligible list resulting therefrom, except that the Director of Human Resources may correct clerical errors of examiners or errors made in calculating averages any time before the cancellation of such list; provided, however, that no person theretofore certified from such list shall be displaced by reason of such correction. Examination papers of any examination shall be preserved for a period of one year from the date of the examination, after which they may be destroyed if considered desirable.

Thus, unless there is "proof of fraudulent acts or false statements by an applicant," "no person . . . certified . . . shall be displaced." Yet, this is precisely what the circuit court did and what the Majority does even though no one has even alleged that the candidates here committed fraud or made any false statements.

206

¶ 23. Second, as in all law, there is a need for finality in these matters as well. *See State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157, 163 (1994) ("*We need finality in our litigation.*"). That is why Section 10 reads as it does. Under the Majority's void-at-its-very-origin analysis, no successful candidate's position would *ever* be secure, and no candidate would *ever* be at peace—whether one, five, ten, or twenty years had passed (and if some intermediate line *is* to be drawn, it is certainly not our function to draw it anew because Section 10 draws its own line.).

¶ 24. Oliver Wendell Holmes, Jr., once observed in a different context that citizens "must turn square corners when they deal with the Government." *Rock Island, Ark. & La. R.R. v. United States*, 254 U.S. 141, 143 (1920). In my view, it is even more important that government turn square corners when it deals with its citizens. Sadly, that has not been done here. I respectfully dissent because I would apply Section 10's clear mandate and reverse.