# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2022AP289

†Petition for Review filed

Complete Title of Case:

> **DELAVAN LAKE SANITARY DISTRICT,**
>     **PETITIONER-APPELLANT,**
>
>     **V.**
>
> **WALWORTH COUNTY BOARD OF ADJUSTMENT AND WALWORTH COUNTY,**
>     **RESPONDENTS-RESPONDENTS.†**

| | |
|---|---|
| Opinion Filed: | March 8, 2023 |
| Submitted on Briefs: | December 15, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Neubauer, Grogan, and Lazar, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the petitioner-appellant, the cause was submitted on the briefs of *H. Stanley Riffle* and *Luke A. Martell*, of *Municipal Law & Litigation Group, S.C.*, Waukesha. |
| Respondent ATTORNEYS: | On behalf of the respondents-respondents, the cause was submitted on the brief of *Lee D. Huempfner,.Walworth County Judicial Center*, Elkhorn. |

<table>
<tr><td>

**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 8, 2023**

Sheila T. Reiff
Clerk of Court of Appeals

</td><td>

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

</td></tr>
</table>

| | |
|---|---|
| **Appeal No.**     **2022AP289** | Cir. Ct. No. 2020CV501 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

DELAVAN LAKE SANITARY DISTRICT,

    PETITIONER-APPELLANT,

  V.

WALWORTH COUNTY BOARD OF ADJUSTMENT AND WALWORTH COUNTY,

    RESPONDENTS-RESPONDENTS.

APPEAL from an order of the circuit court for Walworth County: DAVID M. REDDY, Judge. *Reversed and cause remanded with directions*.

Before Neubauer, Grogan and Lazar, JJ.

¶1 NEUBAUER, J. The Delavan Lake Sanitary District appeals from an order of the circuit court affirming, upon certiorari review, the Walworth County Board of Adjustment's decision to deny the District a permit to lay a gravel path

over land near Delavan Lake. We agree with the District that the Board proceeded on an incorrect theory of law when it found that the proposed path was not a "utility structure," and thus ineligible under WIS. STAT. § 59.692(1n)(d)5. (2019-20)[1] for exemption from the County's shoreland zoning ordinance which restricts construction or placement of structures within seventy-five feet of navigable waters. Accordingly, we reverse the circuit court's order and remand this case with instructions to return this matter to the Board for further consideration of the District's eligibility for the statutory exemption under § 59.692(1n)(d)5. as further explained below.

## BACKGROUND

¶2    The District is a municipal corporation created and existing under WIS. STAT. ch. 60 (applicable to towns) to operate and maintain a sewage and wastewater collection system for public benefit—that is, "for the promotion of the public health, comfort, convenience or welfare of the district." WIS. STAT. § 60.77(4). It is undisputed that the District is not a "[p]ublic utility" as defined in WIS. STAT. § 196.01(5).

¶3    The District's wastewater collection system serves residences in the View Crest subdivision, which is located at the west end of Delavan Lake. The District holds an easement on land owned by the Delavan Lake View Crest Estates Corporation "to lay, operate and maintain a sewer [system]." The components of the system within the easement include a gravity sewer and sixteen-inch force main from a lift station, along with manholes that provide access to the sewer piping. These components are located within: (1) a gravel stone road that runs along a

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

channel at the west end of the lake; (2) a grass path at the end of the road that "extends approximately 350-feet to the east-northeast;" and (3) "a 400[-]foot unimproved access path that the District mows and uses in dry" conditions to access the manholes. The access path crosses a wetland and can become saturated or flooded.

## I.     The District's Proposal

¶4     The District became concerned that the pipes and other system components in the View Crest subdivision were deteriorating, at risk of failure, and in need of immediate repair. A break in the pipes or groundwater infiltration through the manholes could result in sewage leaking into the surrounding soil and ultimately into the lake. The District needed to bring large vehicles and other equipment onto its easement for inspections and repairs. It concluded that portions of its easement needed to be reinforced so that they could support the weight of this equipment.

¶5     In early 2017, the District applied to the Walworth County Land Conservation Division for a construction-site-erosion-control permit to lay a gravel path on portions of its easement. (We include the Land Conservation Division in "the County" in this opinion for ease of reference.) A work plan described the project as "extend[ing] the existing aggregate path" by laying down "fabric, stone, and gravel which can help prevent ruts and mud from spreading in the area." The District also applied for and received permits for the project from the United States Army Corps of Engineers and the Wisconsin Department of Natural Resources.

¶6     At the County's request, the District enlisted an engineering consultant to examine the project site and analyze options for facilitating access to the system. In a report submitted to the County, the engineer described the soil on

the non-gravel portions of the path as "uniquely weak" and unable to withstand the soil-contact pressure that would be exerted by the repair and maintenance vehicles. The engineer endorsed the District's proposal to fortify the grass path and the unimproved access path by adding a layer of stone and sand, describing it as "the most feasible solution of protecting the District's investment and hav[ing] the least amount of wetland impact." He wrote that extending the path "would enable the vehicles and equipment to stay on the solid surface of the stone drive and not venture off the path and damage wetlands." He also noted that the improved surface would be seeded and "return to grass within 2 years."

¶7 The engineer also examined and rejected several other options for providing heavy equipment access. First, he noted that the District could not access the system via an alternate route because it would run through several yards whose owners were not willing to provide access. Next, the engineer considered the use of fabric, bamboo, or timber mats to lower the soil-contact pressure. He concluded that the use of these mats would not sufficiently lower the contact pressure and would not be feasible "for monitoring work or emergency conditions."

¶8 The engineer next considered the possibility of replacing the existing gravity sewer in the easement with a new force main, which would "reduce manholes and monitoring points and eliminate the need for the access path for most of the easement." Notwithstanding these advantages, the District rejected this option "due to the high capital and operating costs." Finally, the engineer rejected the option of leaving the path in its current state because the District would be able to monitor and repair the system only in dry or frozen conditions, and "more destruction to the wetland areas" would occur in emergencies as vehicles would have to maneuver around wet portions of the path to avoid getting stuck.

¶9 Following the submission of the engineer's report, the District and County officials had further communications concerning the District's proposal. In a letter dated October 30, 2019, the County proposed several steps that the District should take, including as relevant here, obtaining a zoning variance and rezoning some of the property since the path would be within seventy-five feet of the "ordinary high water mark" of the channel to the lake. The District did not agree to take these steps because, as it would later explain, it did not believe it was legally required to do so.

## II.    The County and the Board Deny the District's Permit Application.

¶10 In January 2020, the County denied the District's application. Among its reasons, the County cited the District's failure to obtain the Walworth County Zoning Division's approval for the project and the County's determination that construction of the gravel path would violate its shoreland zoning ordinance, WALWORTH COUNTY, WIS., CODE OF ORDINANCES § 74-174 (2001).[2]

¶11 The District appealed to the Board, which held hearings in May and September 2020. At the first hearing in May, the District made a presentation in support of the proposed gravel path that cited WIS. STAT. § 59.692(1n)(d)5., which exempts certain structures from shoreland zoning ordinances that restrict or prohibit construction within setback areas. The County reiterated its position that rezoning was required and suggested that the Board direct the District to take the steps outlined in the County's October 2019 letter.

---

[2] The ordinances cited in this opinion are available at https://library.municode.com/wi/walworth_county/codes/code_of_ordinances.

6

¶12 The Board met again to consider the District's appeal on September 9, 2020. At that hearing, the president of the Delavan Lake View Crest Estates Corporation acknowledged the District's need to access its sewer infrastructure and indicated a willingness to work with the District to rezone the property if the District would pay for it. The District reiterated its view that it was not required to obtain rezoning under WIS. STAT. § 59.692(1n)(d)5. and other legal authorities.

¶13 The next day, the Board voted unanimously to uphold the County's decision. Shortly after the meeting, the Board filed a notice that set forth the following findings:

> **BOARD OF ADJUSTMENT FINDINGS:** The Board found that the proposed drive is a structure. The Board found the drive is not a structure exempted from shoreland zoning requirements by WIS. STAT. § 59.692(1n)(d). The Board found that the Delavan Lake Sanitary District can use other methods or designs for accessing the site and facilitating maintenance. The Board found that the Wisconsin Department of Natural Resources approval and Army Corp of Engineers approval both cited the possibility of local approvals being required. The Board found the [C]ounty provided the Delavan Lake Sanitary District with the process necessary to obtain approvals for the drive as proposed. The Board found that the applicant failed to pursue that process.

## III. Circuit Court Proceedings

¶14 The District filed a petition for certiorari asking the circuit court to vacate the Board's decision and remand for further proceedings on the District's application. The circuit court denied relief, agreeing with the Board that the proposed gravel path was not a "utility structure" under WIS. STAT. § 59.692(1n)(d)5. and thus not exempt from the County's shoreland zoning ordinance.

# DISCUSSION

## I. Standards Governing Certiorari Review

¶15 On appeal, we review the Board's decision, not that of the circuit court. *Oneida Seven Generations Corp. v. City of Green Bay*, 2015 WI 50, ¶42, 362 Wis. 2d 290, 865 N.W.2d 162. The Board's decision is presumed to be valid and correct, *Arndorfer v. Sauk County Board of Adjustment*, 162 Wis. 2d 246, 253, 469 N.W.2d 831 (1991), but the Board "must apply the appropriate legal standards and adequately express the reasons for its decision on the record." *Driehaus v. Walworth County*, 2009 WI App 63, ¶13, 317 Wis. 2d 734, 767 N.W.2d 343.

¶16 Our review of the Board's decision is de novo, but limited. *Propp v. Sauk Cnty. Bd. of Adjustment*, 2010 WI App 25, ¶9, 323 Wis. 2d 495, 779 N.W.2d 705. We consider only whether the Board: (1) acted within its jurisdiction; (2) "proceeded on a correct theory of law"; (3) acted in an "arbitrary, oppressive, or unreasonable" manner that "represented its will and not its judgment"; and (4) could reasonably have reached its decision based on the evidence before it. *Murr v. St. Croix Cnty. Bd. of Adjustment*, 2011 WI App 29, ¶7, 332 Wis. 2d 172, 796 N.W.2d 837. We conclude that the Board's decision does not satisfy the second and third prongs of this test.

## II. The Board Did Not Proceed on a Correct Theory of Law.

¶17 WISCONSIN STAT. § 59.692 addresses the zoning of shorelands on navigable waters. Among other things, the statute requires county shoreland zoning ordinances to establish a "setback," which is the "distance that a shoreland setback area extends from the ordinary high-water mark," of seventy-five feet. Sec. 59.692(1n)(a), (am).

¶18    Within the "[s]horeland setback area," a county may limit or prohibit "the construction or placement of structures."  WIS. STAT. § 59.692(1)(bn).  The County's shoreland zoning ordinance includes such a prohibition.  *See* WALWORTH COUNTY, WIS., CODE OF ORDINANCES § 74-174(B)1.  But this power is subject to certain exemptions set forth in the statute.  As relevant here, a county shoreland zoning ordinance "may not prohibit the construction of" the following within the seventy-five-foot setback area:

> A utility transmission line, utility distribution line, pole, tower, water tower, pumping station, well pumphouse cover, private on-site wastewater treatment system that complies with ch. 145, and *any other utility structure* for which no feasible alternative location outside of the setback exists and which is constructed and placed using best management practices to infiltrate or otherwise control storm water runoff from the structure.

Sec. 59.692(1n)(d)5. (emphasis added).[3]

¶19    The Board found that the gravel path is not an exempt structure under the statute.  The Board did not specifically state that the proposed gravel path is not a "utility structure" under WIS. STAT. § 59.692(1n)(d)5.  But that is how both the parties and the circuit court construe its finding, and we agree that the Board's finding that the path is a "structure," but not an *exempt* structure, is appropriately read that way.

¶20    The Board also found that the District failed to follow the process laid out by the County for obtaining approvals for the project.  These steps, which included obtaining a zoning variance since the path would be within the seventy-five-foot setback area and rezoning certain areas of the property, were premised on

---

[3] The County's shoreland zoning ordinance contains a similar exemption.  *See* WALWORTH COUNTY, WIS., CODE OF ORDINANCES § 74-174(B)3.d. (2001).

the Board's determination that the statutory exemption did not apply because the path was not a "utility structure."

¶21     The parties' dispute over whether the path is a "utility structure" under the statutory exemption implicates the Board's theory of law because it focuses on whether the Board "relie[d] on the applicable [legal authorities] and applie[d] them properly." *Edward Kraemer & Sons, Inc. v. Sauk Cnty. Bd. of Adjustment*, 183 Wis. 2d 1, 8-9, 515 N.W.2d 256 (1994).

¶22     To date, no Wisconsin Supreme Court decision or published court of appeals decision has interpreted WIS. STAT. § 59.692(1n)(d)5.  When interpreting statutory language, our aim "is to determine what the statute means so that it may be given its full, proper, and intended effect."  *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110.  To do so, we give the language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."  *Id.*, ¶45.  We interpret statutory language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results."  *Id.*, ¶46.  "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning."  *Id.* (citation omitted).

¶23 The Board found that the gravel path constituted a "[s]tructure," and neither party challenges that finding on appeal.[4] So, the crux of the parties' dispute is whether the District is a "utility."

¶24 WISCONSIN STAT. § 59.692 does not define "utility." In determining the meaning of this term, we consider other language in the statute. *Kalal*, 271 Wis. 2d 633, ¶46 (statutory language is to be interpreted in context and "as part of a whole"). Section 59.692(1n)(d)5. includes the catch-all phrase "any other utility structure" at the end of a list of specific items that are exempted from shoreland zoning ordinance restrictions. The word "any" in this phrase signals that we are to construe the phrase broadly. *See* **State v. Jensen**, 2010 WI 38, ¶46, 324 Wis. 2d 586, 782 N.W.2d 415.

¶25 In addition, the inclusion of the words "any other" before "utility structure" indicates that the legislature considered the specific items which precede the catch-all phrase to be "utility structure[s]." *See* WIS. STAT. § 59.692(1n)(d)5.; *cf.* **Miller v. Hanover Ins. Co.**, 2010 WI 75, ¶32, 326 Wis. 2d 640, 785 N.W.2d 493 (examining WIS. STAT. § 806.07(1), which lists "specific circumstances for which relief [from judgment] may be granted" followed by "a catch-all provision allowing relief from judgment for any other reasons justifying relief." (citation omitted)).

---

[4] A "[s]tructure" under the statute is "a principal structure or any accessory structure including a garage, shed, boathouse, sidewalk, stairway, walkway, patio, deck, retaining wall, porch, or fire pit." WIS. STAT. § 59.692(1)(e).

The County notes that the District argued that the gravel path is not a "structure" at one of the Board's hearings. The hearing transcript is not clear as to whether the District had the statutory definition of "structure" in mind when it made this point. If anything, the District's remarks suggest it was merely trying to contrast structures like buildings, which rise up from the ground, from the gravel path, which was intended to "match the existing ground elevation." Regardless, the Board found that the gravel path is a "structure" and the County does not challenge that finding on appeal.

One of those items identified in § 59.692(1n)(d)5. is a "private on-site wastewater treatment system that complies with [WIS. STAT.] ch. 145." Chapter 145 defines a "[p]rivate on-site waste water treatment system" to include "a sewage treatment and disposal system serving a single structure." WIS. STAT. § 145.01(12). The inclusion of such a system as a specific example of a "utility structure" in § 59.692(1n)(d)5. suggests that the legislature intended the range of activities and services encompassed within the word "utility" to include sewage disposal and treatment.[5]

¶26      The County argues that we should construe "utility" to have the same meaning given to the term "[p]ublic utility" in WIS. STAT. § 196.01(5), which would exclude the District because the definition excludes sewage services provided by a governmental unit.[6] We are not persuaded by this argument.

¶27      When the legislature wishes to inject the definition of "[p]ublic utility" in WIS. STAT. § 196.01(5) into another statute, it uses clear and specific language to do so. Indeed, one need look no further than the very shoreland zoning statute at issue in this case for an example of such a clear legislative pronouncement. WISCONSIN STAT. § 59.692(7)(a), which neither party cites, specifically addresses

---

[5] We might draw the same conclusion from the inclusion of "pumping station" in the statute, but we cannot determine from the briefing and the record whether that term encompasses any of the District's infrastructure or equipment. WIS. STAT. § 59.692(1n)(d)5.

[6] The statute defines a "[p]ublic utility" as:

> every corporation, company, individual, association … and every sanitary district, town, village or city that may own, operate, manage or control … all or any part of a plant or equipment, within the state, for the production, transmission, delivery or furnishing of heat, light, water or power either directly or indirectly to or for the public.

WIS. STAT. § 196.01(5)(a). The statute provides further that a "[p]ublic utility" includes "any person, except a governmental unit, who furnishes services by means of a sewerage system either directly or indirectly to or for the public." Sec. 196.01(5)(a)1.

the requirements to construct and maintain a "facility" under the shoreland statute and expressly incorporates the definition of "[p]ublic utility" in § 196.01(5):

> In this subsection, "facility" means *any property or equipment of a public utility, as defined in [§] 196.01(5)*, or a cooperative association organized under ch. 185 for the purpose of producing or furnishing heat, light, or power to its members only, that is used for the transmission, delivery, or furnishing of natural gas, heat, light, or power.

Sec. 59.692(7)(a) (emphasis added). Subsection (7)(a) specifically incorporates the definition in § 196.01(5), whereas subsection (1n)(d)5. does not. And the specific language used in subsection (7)(a)—"*In this subsection*, 'facility' means…" (emphasis added)—"limits the application" of the definition of "[p]ublic utility" to subsection (7). *See **Quick Charge Kiosk LLC v. Kaul***, 2019 WI App 51, ¶¶19-20, 388 Wis. 2d 525, 934 N.W.2d 18, *aff'd*, 2020 WI 54, 392 Wis. 2d 35, 944 N.W.2d 598.

¶28 In addition to WIS. STAT. § 59.692(7)(a), our research has unearthed more than twenty statutory provisions scattered across our code that use the same express language to incorporate the definition of "[p]ublic utility" in WIS. STAT. § 196.01(5).[7] The absence of similar incorporating language in § 59.692(1n)(d)5. confirms that "utility" is not limited to the definition of "[p]ublic utility" in § 196.01(5).[8]

---

[7] *See* WIS. STAT. §§ 16.27(9), 16.958(1)(c), 26.03(1v)(c), 30.206(1)(ag)2., 30.208(3)(e), 66.0404(1)(u), 76.28(1)(d), 101.647(3)(am)1., 101.91(6m), 133.07(2), 182.0175(5), 281.344(1)(wr), 281.346(1)(wr), 281.36(3n)(d)2., 283.55(1m), 292.63(3)(cp)2., 346.50(1)(c), 347.26(9), 348.16(3)(b), 349.16(3)(c), 443.14(8m)(a)4., 710.20(4)(a)2. (2021-22), and 946.69(1)(a).

[8] The County cites WIS. STAT. § 59.693(11), which specifies conditions under which the construction of a "facility," which includes "any property or equipment of a public utility, as

¶29    We must also interpret "utility" relative to "the language of surrounding or closely-related statutes." *Kalal*, 271 Wis. 2d 633, ¶46. The District cites several provisions in Subchapter VIII of WIS. STAT. ch. 66 in which town sanitary districts (such as the District) or other enterprises that operate sewerage systems are referred to or treated as utilities. For example, WIS. STAT. § 66.0813(1) permits a town sanitary district to "serve persons or places outside its corporate limits, including adjoining municipalities not owning or operating a similar utility." Section 66.0813(5m)(b) allows certain Wisconsin counties to "request the extension of water or sewer service from another municipality in that county that owns and operates a water or sewer utility." Finally, WIS. STAT. § 66.0827(5)(a) allows a town board to establish a "utility district" and dissolve a sanitary district in the town, if it exists, at which point "all assets, liabilities and functions of the sanitary district shall be taken over by the utility district." These provisions further support the notion that the term "utility" as used in WIS. STAT. § 59.692(1n)(d)5. encompasses municipal sanitary districts, which are not public utilities as defined in WIS. STAT. § 196.01(5).

¶30    Moreover, we note that the term "public utility" does not have a single, fixed meaning in our statutes. In some statutes, that term is defined using language that would encompass the District or the operation of a sewerage system. *See, e.g.*, WIS. STAT. § 66.0621(1)(b) (defining "[p]ublic utility" for purposes of statute governing municipal revenue obligations to include "any revenue producing facility or enterprise owned by a municipality and operated for a public purpose … including … sewerage systems"); WIS. STAT. § 66.0821(3)(b) (stating that where a

---

defined in [WIS. STAT. §] 196.01(5)," is deemed to satisfy a county ordinance for construction site erosion control and storm-water management. Again, this is yet another example of the express language the legislature uses to incorporate the definition in § 196.01(5) into another statute, language that is absent from WIS. STAT. § 59.692(1n)(d)5.

municipality issues revenue bonds to fund sewerage system, bonds are to be paid "as provided in [§] 66.0621" and the term "'public utility' as used in [§] 66.0621 includes the sewerage system, accessories, equipment and other property, including land"); WIS. STAT. § 66.0819(3) (empowering municipalities that "own[] or acquire[] a water system and a plant or system for the treatment or disposal of sewage" to enact ordinances "consolidat[ing] the systems into a single public utility"). We disagree with the County's contention that the definition of "[p]ublic utility" in WIS. STAT. § 196.01(5) provides better guidance in interpreting "utility" than these statutes, which specifically apply to town sanitary districts, such as the District, that operate sewerage systems. These provisions align more closely with WIS. STAT. § 59.692(1n)(d)5.'s use of the word "utility" to include other "public" utilities, such as municipal sewage disposal and treatment.

¶31 Finally, construing the term "utility" to include the District produces a reasonable result consistent with the statute's purpose. *See Milwaukee Police Ass'n v. City of Milwaukee*, 2018 WI 86, ¶29, 383 Wis. 2d 247, 914 N.W.2d 597. WISCONSIN STAT. § 59.692(1c) requires counties to enact shoreland zoning ordinances "[t]o effect the purposes of [WIS. STAT. §] 281.31 and to promote the public health, safety and general welfare." Section 281.31(1) authorizes the regulation of shoreland areas "to further the maintenance of safe and healthful conditions; prevent and control water pollution; protect spawning grounds, fish and aquatic life; control building sites, placement of structure[s] and land uses and reserve shore cover and natural beauty." The District presented evidence to the Board, which the County has not challenged, that the pipes and manholes located on the District's easement are approaching or are beyond their expected lives and in urgent need of inspection and repair. Absent these needed interventions, failures in the system could introduce raw sewage into the surrounding soil and Delavan Lake.

Construing "utility" in § 59.692(1n)(d)5. to include the District enables the District to reinforce its easement so that it may take actions it deems necessary to prevent the lake from becoming polluted and to promote public health.

¶32    For these reasons, we conclude that the District's proposed gravel path constitutes a "utility structure" under WIS. STAT. § 59.692(1n)(d)5. The Board proceeded under an incorrect theory of law in making a contrary finding.

### III.    The District Established that There Is No Feasible Alternative Location Outside the Setback Area.

¶33    As set forth above, to qualify for the exemption, the gravel path must:

(1) Be a "utility transmission line, utility distribution line, pole, tower, water tower, pumping station, well pumphouse cover, private on-site wastewater treatment system that complies with [WIS. STAT.] ch. 145" or "other utility structure";

(2) Lack a "feasible alternative location outside of the setback" area; and

(3) Be "constructed and placed using best management practices to infiltrate or otherwise control storm water runoff from the structure."

WIS. STAT. § 59.692(1n)(d)5. We have already explained that the Board proceeded on an incorrect legal theory with respect to the first element.

¶34    As to the second element, the Board did not make any findings as to whether a "feasible alternative location outside of the setback exists" for the proposed gravel path. *See* WIS. STAT. § 59.692(1n)(d)5. On appeal, the County fails to point to any record evidence that an alternative placement outside the setback is available. The District has an easement over land that is within the setback and runs along the channel. It seeks to reinforce portions of that easement to allow heavier vehicles to access the manholes and pipes underneath the easement. The

evidence presented by the District, which the County does not challenge, shows that the easement itself must be reinforced to facilitate access to this equipment. Laying the gravel path outside of the setback area, and thus outside the bounds of the District's easement, would not enable the District to access and maintain its equipment. Given the absence of any findings or evidence to the contrary, a denial on this basis would be arbitrary and unreasonable and would represent the Board's will and not its judgment. *See* **Hartland Sportsmen's Club, Inc. v. City of Delafield**, 2020 WI App 44, ¶¶16-18, 393 Wis. 2d 496, 947 N.W.2d 214 (when a denial lacks a factual basis, government decision-maker may not supplement the record with new evidence or assert new grounds on remand).[9]

## IV. The Board Did Not Adequately Explain Its Reasoning as to Whether the District's Permit Application Set Forth Best Management Practices to Control Storm-Water Runoff.

¶35    The Board also did not make any specific findings concerning the third element of the statute—whether the gravel path would be "constructed and placed using best management practices to infiltrate or otherwise control storm water runoff." *See* WIS. STAT. § 59.692(1n)(d)5. The parties do not adequately address this issue. Neither points to record evidence as to whether or not the County had grounds to deny the permit based on this element. The County's October 30, 2019 letter to the District asked it to submit "a stormwater management plan, if the

---

[9] The Board also found that the District "can use other methods or designs for accessing the site and facilitating maintenance." The Board did not identify the legal basis for such a requirement or the specific methods or designs it had in mind. The County contends that this refers to the option to rezone, which we have already addressed, and the use of timber matting. To the extent that this statement supported the Board's conclusion that the path is not an exempt "utility structure," the only evidence in the record regarding alternative means of access is the engineer's report, but that document explains why several alternatives either would *not* provide sufficient access or were cost prohibitive, including the use of timber matting. This evidence was unchallenged before the Board.

[gravel path] creates more than 0.5 acres of impervious surface or disturbs one or more acres of ground." This suggests that the County may not have required such a plan if the project did not exceed those parameters. The Board should make specific findings on remand concerning whether and why the District's proposal does (or does not) satisfy this element.[10]

## CONCLUSION

¶36 The Board's decision is premised on the incorrect legal theory that the proposed gravel path is not a "utility structure" under WIS. STAT. § 59.692(1n)(d)5. We reverse the order of the circuit court denying the District's petition for a writ of certiorari and remand this case to the circuit court with instructions to remand this matter to the Board for further consideration of the District's permit application regarding eligibility for the statutory exemption regarding the best management practices to manage storm-water runoff.

*By the Court.*—Order reversed and cause remanded with directions.

---

[10] Our conclusion that the Board proceeded on an incorrect legal theory and did not adequately explain the reasons for its findings makes it unnecessary to address the District's argument that the Board's decision violated its right as an easement holder to make improvements to its easement. *See **Sweet v. Berge***, 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (when one issue is dispositive of an appeal, we need not reach other issues).